CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE, V. JACOB KLEIN, TREASURER OF GAGE COUNTY, APPELLANT.

FILED JUNE 26, 1897. No. 9160.

1. Counties: TAXATION: LIMITATION. The meaning of section 5, article 9, of the constitution is that county authorities, except for the special reasons mentioned in said section, shall never assess taxes for county purposes in excess of 15 mills upon the dollar.

2. ——: TOWNSHIPS: TAXATION. A township in a county under township organization is an independent corporate entity,—a municipal corporation,—within the meaning of section 6, article 9, of the constitution, its existence authorized by that instrument and clothed by law with power to assess taxes upon property within its jurisdiction for such purposes as the legislature has declared to be township purposes.

3. ——: ——: ——. What is a township purpose, and what taxes may be assessed therefor, and by whom assessed, are matters for determination by the legislature.

4. Taxation: ASSESSMENT AND LEVY. To assess a tax is to adjudge and determine what proportion of his property the taxpayer shall

contribute to the public. To levy a tax is to make a record of this determination and to extend the assessment against the taxpayer's property.

5. ——: ——: COUNTIES. In counties under township organization the board of supervisors may assess taxes upon all taxable property in the county for county purposes, and the electors of the township in which such property is situate may also assess such property for township purposes; and although the aggregate taxes so assessed exceed 15 mills on the dollar, such excess is not void for that reason, although the taxes so assessed were not for the payment of a debt existing at the adoption of the constitution of 1875, nor for a purpose authorized by a vote of the people of such county.

APPEAL from the district court of Gage county. Heard below before STULL, J.  Reversed.

Samuel Rinaker, R. W. Sabin, and R. S. Bibb, for appellant.

References: Wabash, St. L. & P. R. Co. v. McCleave, 108 Ill., 368; Van Horn v. State, 46 Neb., 62; State v. Douglas County, 47 Neb., 428; Macon County v. Huidekoper, 134 U. S., 332; State v. Missouri P. R. Co., 27 S. W. Rep. [Mo.], 367; State v. Dodge County, 8 Neb., 125; Curry v. District Township of Sioux City, 17 N. W. Rep. [Ia.], 191; Wright v. Wabash, St. L. & P. R. Co., 12 N. E. Rep. [Ill.], 240; Turner v. Althaus, 6 Neb., 54; Pleuler v. State, 11 Neb., 547; Hills v. City of Chicago, 60 Ill., 90; Newell v. People, 7 N. Y., 97; Gibbons v. Ogden, 9 Wheat. [U. S.], 188; Hamilton v. St. Louis County Court, 15 Mo., 3; Salt Creek Township v. King Iron Bridge Co., 33 Pac. Rep. [Kan.], 303; Coutant v. People, 11 Wend. [N. Y.], 511; Moers v. City of Reading, 21 Pa. St., 188; Lane v. Dorman, 3 Scam. [Ill.], 238.

Charles F. Manderson, E. R. Duffie, J. W. Deweese, James E. Kelby, and A. Hazlett, contra.

References: People v. Blodgett, 13 Mich., 127; Scott v. Sanford, 19 How. [U. S.], 393; Morgan v. Cree, 46 Vt., 787; Morton v. Peck, 3 Wis., 714; State v. City of Milwaukee, 20 Wis., 87; Watertown v. Cady, 20 Wis., 502; Crane v. City of

*Fond du Lac,* 16 Wis., 196; *State v. Missouri P. R. Co.,* 27 S. W. Rep. [Mo.], 367; *State v. County Commissioners,* 47 Neb., 428; *City of Wahoo v. Reeder,* 27 Neb., 770; *City of Chicago v. Larned,* 34 Ill., 203.

RAGAN, C.

In the year 1896, and for some years prior thereto, Gage county was under township organization. In said year the Chicago, Burlington & Quincy Railroad Company owned certain property and lines of railway situate in certain townships of said county. In said year the electors of said townships, at their annual township meetings provided for by law, assessed for township purposes certain taxes upon the property of the railway company situate in said townships. The aggregate of these taxes did not exceed 7 mills on the dollar, the amount which the law allowed said electors to assess upon property in their townships for township purposes. In the same year the board of supervisors of Gage county assessed the property of the railway company in said townships for county purposes. The aggregate assessment made by the county board did not exceed 15 mills on the dollar. However, the aggregate assessment made by the electors of the townships and the supervisors of the county exceeded 15 mills on the dollar, and the railway company instituted this proceeding against the county treasurer of Gage county to enjoin him from collecting the excess of such taxes over 15 mills on the dollar, on the ground that such excess was void. The railway company had a decree as prayed in the district court of Gage county, and the treasurer has appealed.

1. The record before us does not disclose that the taxes assessed by the electors of the townships against the appellee's property exceeded the legal limit of 7 mills upon the dollar, nor is it suggested that any of said taxes so assessed by the township electors were for an illegal or an unauthorized purpose; nor does the record disclose

that the assessment made upon the appellee's property by the board of supervisors of Gage county for county purposes exceeded the legal and constitutional limit of 15 mills upon the dollar; nor is it suggested, either in the record or the argument, that any of the taxes assessed by the board of supervisors of said county were assessed for an illegal or unauthorized purpose. Since by the statutes of the state the electors of the townships of counties under township organization are authorized to assess taxes upon the property in their townships to the extent of 7 mills upon the dollar, and not prohibited from so doing by the constitution, and since the board of supervisors of counties under township organization are authorized to assess taxes upon all the taxable property of the county for county purposes to the extent of 15 mills upon the dollar, we might reverse this decree and dismiss this proceeding because the appellee has not pointed out the illegality of any particular tax assessed by the board of supervisors or the townships; but the question involved is too important to be decided upon a technicality. The theory of the appellee, and presumably the theory upon which the district court based its decree, is that township organization was unknown in this state at the time of the adoption of the constitution of 1875; that at that time the fiscal affairs of the counties of the state were managed by a board of commissioners, who assessed all taxes for all public purposes, except state, school district, city, and village; and that the framers of the constitution of 1875, by the adoption of section 5, article 9, of that instrument, intended that the aggregate taxes assessed upon property for all purposes, except state, school district, city, and village, should never exceed 15 mills upon the dollar, whether the county was under township organization or not; that prior to the adoption of the constitution the taxes now assessed by townships for road, bridge, and other township purposes, were assessed by the county commissioners for county purposes; that the taxes now assessed by townships on the property therein

for township purposes are in truth and in fact for county purposes; and that therefore the taxes assessed by said townships when added to the taxes assessed by the board of supervisors cannot exceed 15 mills upon the dollar, except they be assessed for the purpose of paying an indebtedness existing at the time of the adoption of the constitution of 1875, or for a purpose authorized by a vote of the people of such county.

The justness of this argument appeals with great force to this court; and it would afford us pleasure to be able to adopt this construction of the constitution, as the writer at least is persuaded that one of the crying evils of the times is the legal confiscation of the citizens' property under the name or guise of taxation. But we are not at liberty to adopt this construction. Both upon principle and authority we think the construction erroneous. Section 5, article 9, of the constitution provides: "County authorities shall never assess taxes the aggregate of which shall exceed one and one-half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." Section 6 of said article is as follows: "The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment or by special taxation of property benefited. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." Section 5, article 10, of the constitution is as follows: "The legislature shall provide by general law for township organization, under which any county may organize whenever a majority of the legal voters of such county voting at any general election shall so determine," etc.

Looking to all these provisions we think the framers of that instrument committed to the legislature the

power to adopt one of two systems of county govern-
ment,—either to commit the management of the fiscal and
other affairs of a county to some board, person, or tribu-
nal, which should determine and assess the taxes neces-
sary for the carrying on of the county government, in
which event the taxes so assessed should not exceed 15
mills upon the dollar, or that the legislature should by
law prescribe a system of township organization by which
the affairs of the various townships of a county should be
managed by the electors thereof, or some board or tri-
bunal prescribed by law, and that these townships so con-
stituted should assess such taxes upon the property
therein for township purposes as they might see fit,—
keeping within the limits prescribed by the legislature;
that it was perfectly competent for the legislature in de-
vising a scheme of township government to divide be-
tween a board of supervisors of a county having township
organization, and the townships thereof, the performance
of the duties,—the assessing and collecting of taxes,—
which prior to the adoption of the constitution devolved
entirely upon the board or tribunal invested with the
management of the affairs of the county.

Counsel for the appellee insist, with much force, it must
be confessed, that it was not the intention of the framers
of the constitution to permit counties under township
organization to assess taxes to a greater extent for what
are in fact county purposes than such a county could
have lawfully assessed had not the county adopted town-
ship organization. On the contrary, we think this very
contingency was in the mind of the framers of the consti-
tution. They knew, and must have known, that the gov-
ernment of a county under township organization might
be more expensive than one governed by a board of
county commissioners. They also knew that many of the
people of this commonwealth are advocates of township
government, on the theory that the power which adminis-
ters their affairs and which assesses the taxes upon their
property is nearer and more easily controlled by them

under township organization. Indeed the system of township organization, or the direct government of the affairs of a township by the inhabitants thereof, is the oldest form of democracy known to the Aryan race; and this system of government was styled by Thomas Jefferson as "the wisest invention ever devised by the wit of man for the perfect exercise of self-government and for its preservation." (3 Bryce, American Commonwealth [3d ed.], p. 595.) At the time the present constitution was adopted certain state officers, styled the "state board of equalization," assessed taxes upon all the property of the state for state purposes. The officers of the various school districts of the state assessed taxes upon the property in their jurisdiction for school purposes. City and village authorities assessed taxes upon the property in their respective municipalities for their own purposes, and the county authorities assessed taxes upon the property in the county for county purposes. The constitution of 1875 did not change this method of assessing taxes. It did not forbid its continuance and the system is in force at the present time. We think that the limitation found in section 5, article 9, of the constitution is that county authorities shall never assess taxes for county purposes in excess of 15 mills upon the dollar; and that a township in a county under township organization is a municipal corporation within the meaning of section 6, article 9; and the legislature is clothed with authority by the constitution to authorize such township to assess such taxes upon the property therein for township purposes as it may deem expedient; that the board of supervisors of counties under township organization have no authority, as the law now exists, to assess taxes for township purposes any more than they have authority to assess taxes for school district, city, village, or state purposes. What is a township, and what a county, purpose, is a matter for the legislature. How much tax and by whom it may be assessed for township purposes is a matter for the legislature. In the case at bar it appears that

the township electors assessed the taxes complained of
for township purposes in accordance with the statutes in
force.   They were properly certified to the county clerk
of Gage county according to the statute in force, and
these taxes were then levied by the board of supervisors
—practically by the clerk of the county—upon the prop-
erty in the townships; but the legislature has not seen
fit to confer upon boards of supervisors the power to as-
sess taxes for township purposes.   To assess a tax is to
adjudge and determine what proportion of his property
the taxpayer shall contribute to the public.   To levy a
tax is to make a record of this determination, and to ex-
tend the assessment against the taxpayer's property.
The constitution gives to county authorities the power to
assess taxes only for county purposes.   No statute of this
state confers or attempts to .confer upon townships, in
counties under township organization, authority to assess
a tax for anything but a township purpose.   In other
words, a township in counties under township organiza-
tion is an independent corporate entity, authorized by the
constitution and vested by the legislature with power
to assess taxes upon all the property therein for such
purpose as the legislature has declared to be township
purposes.   If we assume that the taxes in controversy
here were levied by the board of supervisors of Gage
county in pursuance of section 77 of the revenue law of
the state, and that such taxes exceed 15 mills upon the
dollar valuation, it does not follow that the excess over 15
mills is void, because the command of the constitution
is not that the county authorities shall not levy taxes in
excess of 15 mills upon the dollar, but that they shall not
assess such taxes.   These views find support in *Wabash,
St. L. & P. R. Co. v. McCleave*, 108 Ill., 368.   This was a
case strikingly like the one at bar, and in said case the
supreme court of Illinois construed section 8, article 9,
of their constitution, which is identical with section 5,
article 9, of the constitution of this state, except in the
Illinois constitution the limit of taxes which may be as-

sessed by the county authorities is 75 cents on $100 and in ours it is $1.50 upon $100. This case was followed and reaffirmed in *Wright v. Wabash, St. L. & P. R. Co.*, 12 N. E. Rep. [Ill.], 240. To the same effect see *Macon County v. Huidekoper*, 134 U. S., 332, in which a provision of the constitution of the state of Missouri similar to section 5, article 9, of our constitution was examined by the supreme court of the United States and the same construction placed thereon that was reached by the supreme court of Illinois in the cases just cited. It is true that the supreme court of the state of Missouri, in *State v. Missouri P. R. Co.*, 27 S. W. Rep., 367, has placed a different construction upon their constitution from the construction placed thereon by the supreme court of the United States. And since the constitutions of Illinois, Missouri, and Nebraska are similar, in respect to the matter under consideration here, the supreme court of Missouri has placed a different construction upon the language of the Illinois and Nebraska constitutions from that placed thereon by the supreme court of Illinois. But since this provision of our constitution was copied from that of Illinois, and since the supreme court of that state has construed the section of the constitution under consideration, if we were governed entirely in this case by precedent we should cheerfully follow the construction placed on the constitution by the supreme court of Illinois. As already stated, the appellee's contention is that the framers of our constitution and the people who adopted it understood and intended that all taxes to be levied by townships in counties under township organization were county taxes and included in the limitation of 15 mills upon the dollar which county authorities were then authorized to assess.

One other argument of appellee in support of this contention deserves consideration. It is said that section 5, article 10, of the Illinois constitution of 1870, from which section 5, article 10, of our constitution was copied, contained a provision which was omitted from our consti-

tution and that provision is as follows, commencing after the word "determine," found in section 5, article 10, of our constitution: "And whenever any county shall adopt township organization so much of this constitution as provides for the management of the fiscal concerns of the said county by the board of county commissioners may be dispensed with and the affairs of said county may be transacted in such manner as the general assembly may provide." It is said that the reason why this provision of the Illinois constitution was omitted from ours is: "When our constitution was adopted the whole taxing power was vested in the county authorities. The constitution limited the levy which these authorities were authorized to make, and that no possible scheme might be devised to evade the imposed limit, the taxing power was continued in the county authorities on whom the limit was fixed, and the Illinois plan of allowing the legislature to formulate some other scheme of conducting the affairs of the county, on the adoption of township organization, was rejected and repudiated. The taxing power was to continue where it had always been, so that no question could ever be raised as to the application of the limitation imposed by the constitution." Plausible as this argument seems, it is not tenable. It is true that the provisions of our constitution under consideration here were all taken from the Illinois constitution of 1870. But the first constitution of the state of Illinois, adopted in the year 1818, contains no reference whatever to any such a thing as township organization, nor did it provide or prescribe anything in reference to the government or fiscal management of the affairs of the counties of the state. The Illinois constitution of 1848 committed the management of the fiscal and other affairs of the counties to a county court, consisting of a county judge and one or more justices of the peace. Sections 17, 18, and 19, article 5, of the constitution of the state of Illinois of 1848, and section 6 of article 7 of said constitution, after providing that the general assembly should provide by

law for township organization, declared that when any county should adopt township organization that "so much of this constitution as provides for the management of the fiscal concerns of the said county by the county court may be dispensed with and the affairs of said county may be transacted in such manner as the general assembly may provide." The Illinois constitution of 1870, article 10, section 6, commits the management of the fiscal and other affairs of counties not under township organization to three officers, styled "the board of county commissioners," and section 5 of said article provided that the legislature should by general law provide for township organization, and then declared that "so much of this constitution as provides for the management of the fiscal concerns of the said county by the board of county commissioners may be dispensed with and the affairs of such county may be transacted in such manner as the general assembly may provide." It will thus be seen that it was necessary for the framers of the Illinois constitution of 1870 to retain therein that part of article 5, section 10 thereof, which was omitted from our constitution. Otherwise the constitution itself would have left the subject of county government in cases where counties had adopted township organization ambiguous; but there was no necessity for copying the provision alluded to into section 5, article 10, of our constitution, because section 4 of said article provided: "The legislature shall provide by law for the election of such county and township officers as may be necessary." In other words, it was necessary for the framers of the Illinois constitution of 1870 to make some provision for the management of counties that might adopt township organization, because, as the constitution of 1848 then stood, the affairs of counties as then managed were to be managed by a board of commissioners. But when the present constitution of Nebraska was adopted the constitution of 1866 was in force, and that did not prescribe or attempt to prescribe by whom the fiscal and other affairs

of counties should be managed. That matter was by that constitution left to the legislature, and the constitution of 1875 has still left it to the legislature to determine by whom the fiscal and other affairs of all counties shall be managed and conducted.

We conclude, therefore, that in counties under township organization the board of supervisors may assess taxes upon all the taxable property in the county for county purposes, and the electors of the various townships may assess taxes for township purposes upon all the property in the townships; and that, although the aggregate of the taxes so assessed exceeds 15 mills upon the dollar valuation, such excess is not for that reason void, even though the taxes so assessed were not for the payment of a debt existing at the adoption of the constitution of 1875, nor for a purpose authorized by a vote of the people of such county. The decree of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.