DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1921.

---

.Thomas H. Willis, Appellee, v. Edwin M. Clark, Appellant.

### Gen. No. 26,061.

COVENANTS—*what not a breach of warranty of payment of taxes*
Taxes for the years 1909, 1910 and 1911, on property formerly exempt but conveyed to a nonexempt party in 1908, but not entered in the record of the board of assessors until 1912, when they were entered as back taxes, were not levied on the lots in question until subsequent to the year 1911, and did not constitute a breach of a warranty contained in a deed warranting to defend the premises against all lawful claims "except taxes * * * levied subsequent to the year 1911."

Appeal from the County Court of Cook county; the Hon. J. H. RAGSDALE, Judge, presiding. Heard in the Branch Appellant Court at the March term, 1920. Reversed. Opinion filed October 4, 1921.

A. W. MARTIN and EDWARD H. S. MARTIN, for appellant.

WILLIAMS & RYER, for appellee; CHARLES A. WILLIAMS, of counsel.

(614)

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $251.03 rendered by the county court of Cook county against the defendant, Edwin M. Clark, in an action in covenant tried before the court without a jury upon a stipulation of facts supplemented by the testimony of witnesses and certain documentary evidence.

Counsel for defendant first urge as grounds for reversal (a) that judgment should have been entered in defendant's favor on his motion because a copy of the instrument sued on was not filed by plaintiff at least ten days before the second term of the court; (b) that the court admitted certain improper evidence offered by plaintiff; and (c) that the court improperly refused to consider or mark certain propositions of law submitted by defendant. In the view we take of the case it will be unnecessary for us to consider any of these points.

Counsel's main contention is that the finding and judgment are contrary to the law. The controversy concerns the general taxes for the years 1909, 1910 and 1911, subsequently back taxed, on 24 lots in a certain subdivision in Cook county, Illinois.

The following facts, in substance, appear: Lake Forest University, a corporation, was incorporated under the name of Lind University by special act of the legislature in 1857. By a subsequent act passed in 1865 the name was changed to Lake Forest University. In the original act of incorporation there was a section providing that "all property of whatever kind or description belonging or pertaining to the corporate body created by this act shall be and forever remain free and exempt from all taxes for any and all purposes whatever." On October 14, 1908, the Lake Forest University conveyed to the defendant, Clark, the lots in question together with other real estate. On November 12, 1912, by statutory warranty deed, Clark and

wife conveyed to one Myers the lots in question, together with other real estate, "subject to all taxes and special assessments levied subsequent to the year 1911." On July 20, 1916, Myers and wife, by statutory warranty deed, conveyed the lots in question to the plaintiff, Willis. On all the tax books, records and collector's warrants for the years 1909, 1910 and 1911, of said county of Cook, the lots in question were listed in the name "Lak F. University" as owner, but were marked "Exempt" therein, and they were not valued by the Board of Assessors or valued or equalized by the Board of Review or the Board of Equalization and no tax was therein extended against them or any portion of them; and they were not listed (except as above set forth) for taxation for taxes for said years 1909, 1910 and 1911 in any tax book, record or collector's warrant until a triplicate record was made in the year 1912, prior to July 1 of that year, by the Board of Assessors, one of which copies is now in the office of the Board of Review, another in the office of the Board of Assessors and still another in the office of the County Clerk, which last mentioned record was delivered to said clerk by the Board of Review on September 28, 1912, and is known as "List of taxable Real Estate, Lands, Town Lots and Blocks in the Town of Lake." The entry in the record in the office of the Board of Assessors is as follows: "H. L. Stewart's subdivision, S. W. ¼, 1–38–13, E. F. Brown's subdivision of lot 2, block 7, lots 1–24, assess back taxes for year 1909; lots 1–24, assess back taxes for year 1910; lots 1–24, assess back taxes for year 1911." The entry in the record in the office of the Board of Review and in the Office of the County Clerk is in the same words and figures with the exception that the word "assess" is omitted, and the valuations are extended as set forth in the collector's warrant for the year 1912, which warrant is dated February 24, 1913, and in which appear said lots op-

posite the name "Lak F. University," as owner, with the taxes extended for the year 1912; and in addition there appear words relating to the back taxes, for said years 1909, 1910 and 1911, the valuations as corrected by the Board of Review and the valuations as equalized by the Board of Equalization, the totals, and the further notation as to said back taxes: "August 29, 1913, forfeited." The plaintiff, Willis, testified that prior to July 31, 1917, he had several conversations with the defendant, Clark, concerning the payment of said back taxes, and on July 31, 1917, he wrote Clark a letter in part as follows:

"The County Collector presents a bill this year for taxes on Richmond Street lots for years 1909–1910–1911, amounting to $355.51. The original bill was $173.71, but this has been more than doubled by penalties and interest. The records show that you purchased this property from the Lake Forest University on October 14, 1908 and sold to Mr. Myers on November 13, 1912. * * * You gave Mr. Myers a warranty deed subject to taxes subsequent to the year 1911. We have to pay the taxes this year as the property is being built on and we have no recourse but to sue under the warranty in the deed. * * * We believe the matter can be adjusted to some extent. If you are willing to help out on this and will make a proposition, we will work on it; otherwise, it will put us in a better position in our suit against you to pay the taxes in full under a judgment entered by the County Court. At one time you said that you would pay this, but the last time I saw you you seemed to take the position that you did not owe any of it. * * * Will you kindly let us know if you are willing to make any adjustment on this."

On August 21, 1917, before the plaintiff, Willis, had paid any of said back taxes for said years 1909, 1910 and 1911, he was sued in the county court of Cook county in an action in debt brought in the name of the People of the State of Illinois for said back taxes, amounting to $355.50. On the same day he filed a plea

of *nil debet* to the declaration, and, by stipulation of the parties, the cause was submitted to the court for trial without a jury, and the court after a hearing found the issues for the plaintiffs, and the amount of the debt to be $355.50, and assessed the damages at the sum of $225.06, and entered judgment against Willis for $225.06. He immediately satisfied the judgment by paying said amount to the treasurer of Cook county. On October 3, 1917, Willis brought the present action in covenant against Clark. In his declaration he averred that on November 12, 1912, by warranty deed, Clark had conveyed to Myers the lots in question; that Clark by said deed covenanted with Myers, among other things, that he, Clark, would warrant and forever defend the premises to said Myers, his heirs and assigns, against all lawful claims, "except taxes * * * levied subsequent to the year 1911"; that on July 20, 1916, Myers, by warranty deed, had conveyed the lots to plaintiff; that Clark did not and would not warrant and defend the premises to plaintiff, as assignee of Myers, against all lawful claims, except taxes levied subsequent to the year 1911, but, on the contrary thereof, "at and after" the time of the ensealing and delivery of defendant's said deed, general taxes for the years 1909, 1910, and 1911 had been levied and assessed against the premises, and were "then" due and unpaid and were a lien and an incumbrance thereon; that by reason thereof plaintiff was required to and did afterwards, on August 21, 1917, pay said taxes; and that thereby defendant broke his covenant, to plaintiff's damage, etc. The cause was finally put at issue and a trial had, resulting in the finding and judgment above mentioned.

The defendant, Clark, in his deed to Myers covenanted with him, his heirs and assigns, that he would warrant and forever defend the premises against all lawful claims, "except taxes * * * levied subsequent to the year 1911." If the taxes in question were

levied subsequent to the year 1911, clearly Clark, under the provisions of his deed to Myers, is not bound to pay them or to reimburse Willis for the amount which he paid. It appears from the stipulated facts that the lots in question were listed, on all tax books, records and warrants for the years 1909, 1910 and 1911, in the name of the Lake Forest University as owner, but marked ''exempt''; that they were not valued by the Board of Assessors or Board of Review; that no tax was in said books or records extended against said lots or any of them prior to the year 1912; that they were not listed for taxation, for taxes for said years 1909, 1910 and 1911, until some time during the year 1912, when they were ''backed taxed'' as above set forth.

In 37 Cyc. 964, it is said:

''While the word 'levy' as applied to taxation has been given a variety of meanings, in its proper sense, as applied to the determination of the amount or rate to be charged, it is the formal or official action of a legislative body invested with the power of taxation—whether national, state or local—whereby it determines and declares that a tax of a certain amount, or of a certain percentage on value, shall be imposed on persons and property subject thereto.''

In *Chicago, B. & Q. R. Co. v. Klein,* 52 Neb. 258, 265, it is said:

''To *assess* a tax is to adjudge and determine what proportion of his property the taxpayer shall contribute to the public. To *levy* a tax is to make a record of this determination, and to extend the assessment against the taxpayer's property.''

In *City of Chicago v. Fishburn,* 189 Ill. 367, 375, it is said:

''The meaning of the term 'assessment,' in connection with taxation, is well understood. It is an official valuation of property for the purpose of fixing the proportion of taxes which each one shall pay. Judge Cooley, in his work on the Law of Taxation (p. 258), defines it as follows: 'An assessment, strictly speaking, is an official estimate of the sums which are to

constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes of *listing* the persons, property, etc., to be taxed, and of *estimating* the sums which are to be the guide in an apportionment of the tax between them.' By our constitution the assessment is a valuation to be determined according to the discretion of persons elected or appointed in such manner as the General Assembly shall direct."

In *Hodges v. Crowley,* 186 Ill. 305, 312 (quoted with approval in *Pettibone v. West Chicago Park Com'rs,* 215 Ill. 304, 317) it is said:

"There can be no lawful levy of a tax except upon an assessment, and under our system all assessments are made annually. * * * A tax cannot be said to be levied until it has been extended against assessed taxable property."

Applying these principles of law to the stipulated facts in the present case, we are of the opinion that the taxes in question levied on the lots in question were not levied on said lots until subsequent to the year 1911, and that the defendant, Clark, is not liable to plaintiff in this action in any sum. The judgment of the county court is accordingly reversed.

*Reversed.*

BARNES and MORRILL, JJ., concur.