CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, A CORPORATION, APPELLANT, v. COUNTY OF GOSPER, A BODY POLITIC AND CORPORATE, APPELLEE.

46 N. W. 2d 147

Filed February 13, 1951. No. 32923.

*Cloyd E. Clark, Wilber S. Aten, J. W. Weingarten,* and *W. P. Loomis,* for appellant.

*Clarence S. Beck,* Attorney General, *Walter E. Nolte, Homer L. Kyle,* and *Ted R. Frogge,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

In this action plaintiff sought to recover taxes paid under protest. The basis of the suit is that the taxes were levied in excess of the constitutional limitation of Article VIII, section 5. An answer and a reply were filed. Plaintiff moved for judgment on the pleadings. The trial court denied the motion and dismissed plaintiff's petition. Plaintiff appeals. We reverse the judgment and remand the cause.

Article VIII, section 5, of our Constitution provides: "County authorities shall never assess taxes the aggregate of which shall exceed fifty cents per one hundred dollars actual valuation as determined by the assessment rolls, except for the payment of indebtedness existing at

the adoption hereof, unless authorized by a vote of the people of the county."

Prior to 1920, the constitutional provision was: "County authorities shall never assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." Constitution, Art. IX, § 5.

The 1947 Legislature adopted an act relating to improvement of rural mail route roads. Laws 1947, c. 144, p. 393. Among other provisions, that act provided: "Whenever the rural mail route and the star mail route roads of any county of this state need improving by the application of gravel or other suitable surfacing, the county board may, by order entered of record, and upon petition of not less than ten per cent of the legal voters of said county, as shown by the poll books of the last general election, shall submit to the people of said county to be voted upon at a general or a special election called by the county board for that purpose, a proposition to vote a special annual tax for that purpose of one mill on the dollar valuation of all tangible property in said county until all of said rural mail route and star mail route roads of the county have been improved by application of gravel or other suitable surfacing." Laws 1947, c. 144, § 2, p. 394, now § 39-1002, R. S. Supp., 1949.

"The manner of submitting such proposition shall be governed by section 23-126." Laws 1947, c. 144, § 3, p. 394, now § 39-1003, R. S. Supp., 1949.

"The funds to carry out the improvement and maintenance of the rural mail route and star mail route roads shall be raised as follows:

"(1)   The money received under subdivision (3) of section 66-424.01, as amended by this act; and

"(2)   a special assessment of one mill when approved as provided in section 2 of this act.

"All such money shall be placed by the county treas-

urer in a separate fund to be known as 'special mail route road fund' and shall be used for no other purpose than provided for in this act. * * *" Laws 1947, c. 144, § 8, p. 396, now § 39-1008, R. S. Supp., 1949.

Section 23-126, R. S. 1943, provides: "The mode of submitting questions to the people for any purpose authorized by law shall be as follows: The whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the rate per annum, and the whole regulation, including the time of its taking effect, if it be of a nature to be set forth, and the penalty of its violation, if there be one, is to be published for four weeks in some newspaper published in the county. If there be no such newspaper, the publication is to be made by being posted in at least one of the most public places in each election precinct in the county, and in all cases the notices shall name the time when such question will be voted upon, and the form in which the question shall be taken, and a copy of the question submitted shall be posted at each place of voting during the day of election."

Section 23-129, R. S. Supp., 1949, provides: "If it appears that two-thirds of the total number of votes cast upon the proposition at the election in which the proposition is submitted are in favor of the proposition, and the requirements of the law have been fully complied with, the same shall be entered at large by the county board upon the book containing the record of its proceedings, and it shall then have power to levy and collect the special tax in the same manner that the other county taxes are collected. Propositions thus acted upon cannot be rescinded by the county board."

Thereafter on February 2, 1948, a petition was filed with the county clerk directed to the board of county commissioners of Gosper County requesting that there be submitted to the people of the county at a general or special election " '* * * a proposition to vote a special annual tax of one mill on the dollar valuation of all

tangible property in said county, for the purpose of improving the rural mail routes of said county by the application of gravel or other suitable surfacing, such levy to be continued until all of said rural mail routes in said county shall have been so improved.' "

Thereafter the county board provided by resolution for an election at which the following proposition was submitted to the electors: " 'Shall the Board of County Commissioners of Gosper County, Nebraska, levy a special annual tax of one mill on the Dollar valuation of all tangible property in said county of Gosper, Nebraska, for the purpose of improving the rural mail routes of said county by the application of gravel or other suitable surfacing, such levy to be continued until all of the rural mail routes of said county shall have been so improved. * * *' "

The required notice was given and the election was held on April 13, 1948, resulting in a vote of 580 for and 150 against the proposition.

Thereafter the county levied taxes as follows:

| "General Fund | 2.25 mills |
|---|---|
| Bridge Fund | 1.50 mills |
| Road Fund | .70 mills |
| Relief Fund | .10 mills |
| County Agriculture Fund | .20 mills |
| Gosper County Extension Fund | .25 mills |
| | 5.00 mills |
| Special Mail Route Road Fund | 1.00 mills |
| | 6.00 mills" |

The levy was applied to plaintiff's property in Gosper County.

Plaintiff contended that the levy and assessment in excess of five mills was illegal and void and resulted in an illegal tax against it in the amount of $396.80. Plaintiff paid the tax under protest and demanded a refund. The refund was refused. Plaintiff sued to recover.

The county answered alleging the procedures followed under the statute above quoted, admitting that the assessment above five mills was not authorized by a vote of the people except that above set out, and contending that the levy was not prohibited by the constitutional provision and was valid.

Plaintiff by reply contended that the authority to make the levy of one mill for the special mail route road fund did not authorize the county to assess in excess of five mills and that it was subject to the constitutional limitation. Plaintiff then moved for judgment on the pleadings. The motion was overruled. Plaintiff elected not to plead further and declined to offer evidence. The trial court thereupon found for the defendant and dismissed plaintiff's petition. Plaintiff appeals.

The question submitted here is this: Did the above proposition approved by the voters constitute an authorization by a vote of the people to the county to assess taxes, the aggregate of which exceeds five mills, so as to bring it within the provisions of Article VIII, section 5, of the Constitution?

The constitutional provision is clear. As we said in Chase County v. Chicago, B. & Q. R. R. Co., 58 Neb. 274, 78 N. W. 502, there is no room for construction. The aggregate of taxes to be imposed can exceed the limitation stated only in two cases: First, "for the payment of indebtedness existing at the adoption hereof," and when "authorized by a vote of the people of the county." "In all other cases the limitation applies, and no statute and no general equitable considerations can permit it to be disregarded."

With reference to the constitutional provision prior to the 1920 amendment we held: "It is plain that this provision is not a grant of power to county authorities to levy a tax of fifteen mills on the dollar valuation; it is simply a limitation upon the power, operative alike upon the county and the legislature. The principle of the law is firmly established that counties or other municipal

corporations have no inherent power in matters relating to taxation, and they can exercise only such power as is delegated to them by the constitution or by the legislature." Grand Island & W. C. R. R. Co. v. Dawes County, 62 Neb. 44, 86 N. W. 934.

The parties do not dispute these two propositions here.

The county contends here that it followed the provisions of sections 23-126, R. S. 1943, and 23-129, R. S. Supp., 1949; that those two provisions constitute a legislative construction of the contitutional provision; and that the voters, knowing their tax levies, of necessity must be held to have known when they voted on the proposition that they were voting to authorize an annual tax in excess of the constitutional limitation. That position is erroneous for this patent reason.

Section 23-126, R. S. 1943, provides for the mode of submitting questions to the people for any purpose authorized by law. It provides that the "whole question" shall be published.

These two sections must be read in connection with section 23-125, R. S. 1943, which is as follows: "Whenever the county board shall deem it necessary to assess taxes, the aggregate of which shall exceed the rate of one dollar and fifty cents per one hundred dollars' valuation of the property of the county, the county board may, by an order entered of record, set forth substantially the amount of such excess required and the purpose for which the same will be required, and if for the payment of interest or principal, or both, upon bonds, shall in a general way designate the bonds and specify the number of years such excess must be levied, and provide for the submission of the question of assessing the additional rate required to a vote of the people of the county at the next election for county officers after the adoption of the resolution, or at a special election ordered by said county board for that purpose. If the proposition for such additional tax be carried, the same shall be paid in money and in no other manner."

This provision was adopted under the constitutional provision prior to the 1920 amendment. It sets out a procedure to be followed whenever the county board shall deem it necessary to assess taxes, the aggregate of which exceeds the constitutional limit. It sets out the steps to be taken, preliminary to the submission of the question to the voters. It outlines the material elements of the "whole question" which the county board must determine shall be submitted. It clearly provides that there shall be a finding of the "excess required" and its purpose and that the "question of assessing the additional rate" shall be submitted.

It is clear from these provisions that the Legislature required a determination by the county board of the necessity of exceeding the constitutional limit as to the aggregate taxes to be assessed; that that determination be shown by an order entered of record; and that the voters be so advised by proper notice that they were voting to authorize a tax, the aggregate of which exceeds the constitutional limit that may be assessed in the absence of such a vote of authorization.

The petition, the resolution of the county board, the notice of election, and the proposition submitted go no further than authorizing an annual tax for the special purpose of improving the rural mail routes. At no place is there found any determination by the board of the necessity of assessing a tax, the aggregate of which would exceed the constitutional limit where not authorized by a vote of the people, nor was any notice given to the people that they were being asked to authorize such an excess assessment.

Section 39-1002, R. S. Supp., 1949, when read in connection with section 39-1008(2), R. S. Supp., 1949, clearly requires that the special assessment of one mill cannot be made until an election is had resulting in an approval of that annual tax. That election and approval was had. The county board then was authorized to include that special tax within the aggregate five

mill limit tax.

The constitutional provision does not relate to the various taxes that may be included within the aggregate five mill limit. It relates to taxes, the aggregate of which is in excess of that amount. There, so far as concerned here, the authorizing vote is required. It is clear that that vote was not had.

We have reached these conclusions from an analysis of our own Constitution, statutes, and decisions.

There is impressive authority in accord therewith.

In Chicago, B. & Q. R. R. Co. v. Klein, 52 Neb. 258, 71 N. W. 1069, we stated that this provision of our Constitution was taken from the Illinois Constitution of 1870, and "* * * if we were governed entirely in this case by precedent we should cheerfully follow the construction placed on the constitution by the supreme court of Illinois."

In 1874, the Legislature of Illinois adopted an act to revise the laws in relation to counties. Revised Statutes of Illinois 1874, c. 34, p. 302. Section 27 of the Illinois act (p. 308) is now, as amended, section 27, chapter 34, of the Illinois act dealing with counties. (See Smith-Hurd Illinois Anno. St., c. 34, § 27, p. 138.)

In 1879, our Legislature adopted an act concerning counties and county officers. Section 23-125, R. S. 1943, hereinbefore discussed, is section 26 of the 1879 act (Laws 1879, § 26, p. 363) as amended.

It is obvious that our statute either was taken from that of Illinois or stems from the same source. In any event, we have a situation where the constitutional provision and the statutes are the same in the respects material here.

The courts of Illinois have been presented with substantially the identical questions we have here and they in a series of opinions have been decided by the Supreme Court of that state construing, so far as material here, the same constitutional provision as our

Article VIII, section 5, and the same statutory provision as our section 23-125, R. S. 1943.

"Mere authority to levy a special or additional tax does not authorize the county board to levy a tax above the limitation fixed by the statute or the constitution. * * * A special or additional tax authorized by the voters of the county may or may not be in excess of the statutory or constitutional limitation, depending on whether the full tax which the county board is authorized to levy has been levied for other purposes. So it cannot be assumed that the voters by merely authorizing a special or additional tax are authorizing one in excess of the limitations fixed. * * * In the case at bar there is no notice to the voter, either in the notice or the ballot, that the special tax to be levied to pay the principal and interest of the bonds is to be in excess of any limitation, and there is not even a suggestion that when the special tax is added to other taxes for county purposes the aggregate will exceed the limitation fixed by the constitution." People ex rel. Roche v. Cairo & T. R. R. Co., 319 Ill. 118, 149 N. E. 824.

"The form of the ballot used, as set out in the proceedings of the board, submitted to the voters only the question of an additional tax levy to pay interest and principal of bonds. The substance of the notice of the election is set out in the proceedings of the board, and it nowhere informs the voters that the question of levying a tax in addition to that authorized by the constitution was to be voted on. Throughout the proceedings of the board the reference is to the election as one to authorize the levying of an additional tax, and not a tax in addition to the rate fixed by the constitution. This question has received the consideration of this court heretofore, and it has been held that authority to levy an additional tax is not authority to levy a tax above the limitation fixed by the constitution." People ex rel. Forsythe v. Cleveland, C., C. & St. L. Ry. Co., 327 Ill. 611, 159 N. E. 228.

"Before such excess tax may be legally levied there must not only be a favorable vote of the people of the county authorizing the levy of the additional tax for the purpose of building the jail, but there must also be a favorable vote of the people of the county on the proposition to levy the tax in excess of the constitutional limit." People ex rel. Hileman v. Missouri P. R. R. Co., 319 Ill. 433, 150 N. E. 288.

When taxes levied by a county exceed the maximum permitted by the Constitution, the excess is levied for an illegal and unauthorized purpose. Chase County v. Chicago, B. &. Q. R. R. Co., *supra*.

It follows that the trial court erred in not sustaining plaintiff's motion for judgment on the pleadings. The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff as prayed.

REVERSED AND REMANDED WITH DIRECTIONS.