MAYOR OF THE CITY OF LANSING v PUBLIC SERVICE COMMISSION

Docket No. 243182. Submitted April 9, 2003, at Lansing. Decided June 5, 2003, at 9:00 A.M. Leave to appeal granted, 469 Mich 898.

The Public Service Commission entered an order authorizing Wolverine Pipe Line Company to construct and operate a liquid-petroleum pipeline in the right-of-way of Interstate Highway 96 in the city of Lansing and Ingham County. The mayor of the city, the city, and Ingham County Commissioner Lisa Dedden, all of whom intervened in the case, appealed from the order, claiming that Wolverine was required to submit with its application to the PSC proof of consent by the city and the county and failed to gain such consent in advance of the commission's consideration of the application.

The Court of Appeals held:

1. MCL 247.183, as amended by 1994 PA 306, requires the consent of the affected local governments. However, the consent need not be obtained before seeking the approval of the PSC. The order of the PSC must be affirmed.

2. The application was filed under 1999 AC, R 460.17601(1)(c). Subrule 601(1)(c) clearly and unambiguously requires Wolverine to obtain the approval of the PSC for Wolverine's new construction project. The subrule states that 1929 PA 16, MCL 483.1 et seq., is the law governing this matter. The statute does not require a person acting under 1929 PA 16 to submit with its application the consent of the affected local governments.

3. The words "if required" in subrule 601(2)(d) refer to the statutory provisions listed in subrule 601(1).

4. Const 1963, art 7, § 29 does not require the consent of the affected local governments before an application is submitted to the PSC.

5. A project involving the rights-of-way of limited-access highways is subject to the provisions of MCL 247.183(1) in its entirety. Under this provision, Wolverine may enter upon, construct, and maintain the pipeline project at issue. Although the subsection requires the consent of local governmental units before any of the work commences, it does not require the consent to be obtained before seeking the approval of the PSC.

6. MCL 247.183(2) does not exclude a pipeline company from the requirements of MCL 247.183(1).

7. The evidence supports the decision of the PSC to uphold the referee's holding that the present case constituted a continuation of a prior case and that evidence of negotiations between Wolverine and the staff of the PSC in the earlier case was inadmissible in this case under MRE 408.

8. The determination of the PSC that the proposed pipeline is reasonably designed and routed is supported by competent, material, and substantial evidence.

Affirmed.

PUBLIC UTILITIES — PETROLEUM PIPELINES — CONSENT OF LOCAL GOVERNMENTS — APPROVAL OF PUBLIC SERVICE COMMISSION.

The consent of the affected units of local governmental must be obtained before a petroleum-pipeline company may commence work on a pipeline project approved by the Public Service Commission; however, such consent need not be obtained before approval by the PSC is sought (Const 1963, art 7, § 29; MCL 247.183; 1999 AC, R 460.17601 [1][c]).

*James D. Smiertka*, City Attorney, and *John M. Roberts Jr.*, *Margaret E. Vroman*, and *Brian W. Bevez*, Assistant City Attorneys, for the Mayor of the city of Lansing, the city of Lansing, and Lisa Dedden.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges* and *William W. Derengoski*, Assistant Attorneys General, for the Public Service Commission.

*Dykema Gossett PLLC* (by *Albert Ernst* and *Christine Mason Soneral*) (*Paul O'Konski*, of counsel) for Wolverine Pipe Line Company.

Before: TALBOT, P.J., and SAWYER and O'CONNELL, JJ.

TALBOT, P.J. Appellants Mayor of the city of Lansing,[1] the city of Lansing, and Ingham County Commissioner Lisa Dedden appeal as of right from an order of the Public Service Commission (PSC) authorizing Wolverine Pipe Line Company's application to construct and operate a twenty-six-mile liquid-petroleum pipeline in the right-of-way of Interstate Highway 96 (I-96) in the city of Lansing and Ingham County.

This case presents an issue of first impression: Whether MCL 247.183, as amended in 1994, requires a petroleum-pipeline company to seek the consent of the affected local governments for the construction of a pipeline project and, if so, whether such consent should be obtained *before* seeking the PSC's approval for the project. We hold that the statute, as amended, requires the consent of the affected local governments. However, such consent need not be obtained *before* seeking the PSC's approval. Therefore, we affirm the PSC's order.

## I. FACTS AND PROCEDURAL HISTORY

Wolverine's application with the PSC in the instant case stems from an earlier application, PSC Case No. U-12334, in which Wolverine requested permission to construct and operate a liquid-petroleum pipeline. In U-12334, the PSC found that a need for the proposed pipeline existed and it granted the application, except for a portion of the pipeline that was routed between I-96 and LaPaugh Station in Clinton County. Wolverine withdrew that portion of the route design from

---

[1] At the time of the proceedings before the Public Service Commission, the mayor of the city of Lansing was David C. Hollister.

the PSC's consideration before the PSC issued its order in that case.

Wolverine subsequently filed the instant application, PSC Case No. U-13225, requesting approval for an alternative pipeline route to replace the portion of the route that it previously withdrew from the PSC's consideration. Unlike the former route, the majority of the proposed twenty-six-mile route will be contained within the I-96 right-of-way. About twenty-two miles of the right-of-way is controlled by the Michigan Department of Transportation, while the remaining portion is owned privately, necessitating Wolverine to obtain easements. This route runs partially through the city of Lansing and Ingham County.

The mayor of the city of Lansing, the city of Lansing, and Commissioner Dedden[2] intervened in this case. The PSC staff appeared generally pursuant to 1999 AC, R 460.17307. At the conclusion of Wolverine's proofs at the evidentiary hearing before the PSC referee, the city of Lansing moved to dismiss the case for lack of subject-matter jurisdiction. The referee took the motion under advisement and the parties subsequently agreed to raise the jurisdiction question in their briefs before the PSC. In its brief before the PSC, the city moved to dismiss Wolverine's application for lack of subject-matter jurisdiction on the ground that Wolverine filed the application without obtaining the city's consent to construct the pipeline. The city claimed that its consent was required by Const 1963,

---

[2] Ingham County is not part of the instant case and County Commissioner Lisa Dedden does not represent the county. The PSC allowed Dedden to intervene in this case only to represent the concerns of the residents of District 10 of Ingham County. Further, Dedden did not raise or argue below the first two issues raised in this appeal.

art 7, § 29, MCL 247.183(1) and 247.184, and PSC rule, 1999 AC, R 460.17601(2)(d). In response, Wolverine argued that the PSC need not determine whether Wolverine was required to seek the city's consent. Rather, Wolverine claimed that the PSC should only determine whether Rule 460.17601(2)(d) required Wolverine to submit the city's consent with its application. Similarly, the PSC staff argued that the language of the rule did not expressly provide that Wolverine was required to submit with its application proof of the consent of any local government.

The PSC determined that no law or rule required Wolverine to submit with its application proof of the consent of the affected local governments. The PSC also determined that Wolverine had demonstrated a need for the pipeline and that the pipeline was reasonably designed and routed. Accordingly, it approved the application with certain safety conditions that had been proposed by the city. The mayor of the city of Lansing, the city, and Dedden appealed as of right from the PSC order. This Court denied the city's motion for a stay and a subsequent motion for reconsideration. This Court denied Wolverine's motion to affirm, but granted its motion to expedite this appeal.

## II. STANDARD OF REVIEW

This Court's review of PSC orders is relatively narrow in scope. *In re MCI Telecom Corp Complaint*, 240 Mich App 292, 303; 612 NW2d 826 (2000). The standard of judicial review of a decision of the PSC is whether that decision is lawful and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. A party chal-

lenging an order of the PSC bears the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8); MCL 484.2203(8). "A decision of the PSC is unlawful when it involves an erroneous interpretation or application of law, and unreasonable when it is unsupported by the evidence." *In re Sprint Communications Co, LP, Complaint,* 234 Mich App 22, 34; 592 NW2d 825 (1999). This case also requires this Court to construe the relevant statutory provisions. Issues of statutory construction present questions of law and are reviewed de novo. *Florida Leasco, LLC v Dep't of Treasury,* 250 Mich App 506, 507; 655 NW2d 302 (2002).

III. ANALYSIS

A. THE REQUIREMENT FOR LOCAL CONSENT

The city first argues that the PSC improperly interpreted Rule 460.17601 of the PSC's Rules of Practice and Procedure when it determined that the rule did not require Wolverine to submit with its application the city's consent for the project. PSC Rule 460.17601, governing new constructions of public utilities, provides, in pertinent part:

> (1) An entity listed in this subrule shall file an application with the commission for the necessary authority to do the following:
>
> (a) A gas or electric utility within the meaning of the provisions of Act No. 69 of the Public Acts of 1929, as amended, being § 460.501 *et seq.* of the Michigan Compiled Laws, that wants to construct a plant, equipment, property, or facility for furnishing public utility service for which a

certificate of public convenience and necessity is required by statute.

(b) A natural gas pipeline company within the meaning of the provisions of Act No. 9 of the Public Acts of 1929, as amended, being § 483.101 *et seq.* of the Michigan Compiled Laws, that wants to construct a plant, equipment, property, or facility for furnishing public utility service for which a certificate of public convenience and necessity is required by statute.

(c) A corporation, association, or person conducting oil pipeline operations within the meaning of the provisions of Act No. 16 of the Public Acts of 1929, being § 483.1 *et seq.* of the Michigan Compiled Laws, that wants to construct facilities to transport crude oil or petroleum or any crude oil or petroleum products as a common carrier for which approval is required by statute.

(2) The application required in subrule (1) of this rule shall set forth, or by attached exhibits show, all of the following information:

\*　　\*　　\*

(d) The municipality from which the appropriate franchise or consent has been obtained, if required, together with a true copy of the franchise or consent.

In this case, Wolverine's application with the PSC was filed under Rule 460.17601(1)(c). The city argues that the language of subrule 601(1)(c) requires an applicant such as Wolverine to obtain prior consent from the local governments affected by a project. We disagree. Subrule 601(1)(c) clearly and unambiguously provides that a pipeline corporation such as Wolverine is required by statute to obtain the PSC's approval for any new construction project. The subrule directs the reader to Act No. 16 of MCL 483.1 *et seq.*, as the governing body of law. 1929 PA 16, MCL 483.1 *et seq.*, regulates the buying, selling, and transporting of crude oil and petroleum products

through pipelines. It also regulates the use of public highways for that purpose. The city has not pointed to any portion in the statute, and we have not found any, that requires a person acting under 1929 PA 16 to submit with its application the consent of the affected local governments.

The parties also dispute the meaning of the words "if required" in subrule 601(2)(d). The city contends that it means "if required by law," while the PSC staff and Wolverine contend that it means "if required by any of the provisions of subrule (1)." Because the PSC, as a creature of the Legislature, is without authority to establish rules that violate statutory rules and regulations, MCL 483.8, we conclude that the requirement provision in subrule 601(2)(d) would refer back to the statutory provisions listed in subrule 601(1). As previously discussed, MCL 483.1 *et seq.*, does not require the prior consent of the affected local governments. Given the above, we conclude that the PSC properly interpreted this rule.

The city also asserts that Const 1963, art 7, § 29 and subsection 13(1) of the state highway code, MCL 247.183(1), require a city's consent *before* a pipeline company acting under subrule 601(1)(c) may submit its application to the PSC. In pertinent part, Const 1963, art 7, § 29 provides:

> No . . . corporation, public or private, operating a public utility shall have the right to the use of the highways . . . or other public places of any county, township, city or village for . . . pipes . . . or other utility facilities, without the consent of the duly constituted authority of the county, township, city or village . . . . Except as otherwise provided in this constitution the right of all counties, townships, cities and villages to the reasonable control of their highways,

streets, alleys and public places is hereby reserved to such local units of government.

While Const 1963, art 7, § 29 confers upon cities reasonable control over state highways located within their boundaries, *Compton Sand & Gravel Co v Dryden Twp*, 125 Mich App 383, 394; 336 NW2d 810 (1983), there is nothing in the language of the above constitutional provision that mandates the consent of the city before an application is submitted to the PSC.[3] Therefore, we look to the statutory provision at issue.[4]

The city contends that MCL 247.183(1) mandates the prior consent of the city. The PSC staff and Wolverine, on the other hand, claim that the language of the statute, as amended, clearly excepted Wolverine's project from the statute's control.

The relevant part of chapter 247 of the state highway code, MCL 247.171 *et seq.*, was enacted as part of 1925 PA 368. Section 13 of the statute, MCL 247.183, was amended several times. Before 1989, it consisted of a single paragraph that contained two sentences. In pertinent part, the statute authorized public utility companies "to enter upon, construct and maintain" pipelines under any public road, provided that

[e]very such telegraph, telephone, power, and other public utility company, cable television company and municipality,

---

[3] Because the parties have not argued the issue below or properly briefed it on appeal, and in light of our resolution of the statutory provision at issue, we do not address the question whether Const 1963, art 7, § 29 mandates the "consent" of the affected local government when a highway not owned by the affected local government is involved.

[4] The city cursorily mentions MCL 247.184, which mandates the consent of county and state authorities. Because the city does not discuss this statute in its brief on appeal, we do not address it.

before any of the work of such construction and erection shall be commenced, shall first obtain the consent of the duly constituted authorities of the city, village, or township through or along which said lines and poles are to be constructed and erected. [Former MCL 247.183, amended by 1972 PA 268.]

In 1989, the Legislature amended section 13 by adding a second subsection and by changing phrases within the first subsection. The first subsection of the 1989 amendment read in pertinent part:

Telegraph, telephone, power, and other public utility companies, and cable television companies and municipalities are authorized to enter upon, construct and maintain telegraph, telephone, or power lines, pipe lines, wires, cables, poles, conduits, sewers and like structures upon, over, across, or under any public road, bridge, street, or public place, *except longitudinally within limited access highway rights of way*, and across or under any of the waters in this state, with all necessary erections and fixtures for that purpose. A telegraph, telephone, power, and other public utility company, cable television company, and municipality, before any of this work is commenced, shall first obtain the consent of the governing body of the city, village, or township through or along which these lines and poles are to be constructed and maintained. [Former MCL 247.183(1), amended by 1989 PA 215 (emphasis added).]

Thus, the Legislature inserted the phrase "except longitudinally within limited access highway rights of way" in the first sentence. It is clear that, in the 1989 amendment, projects that were longitudinal within limited access highway rights-of-way were exempted from the provisions of the first subsection of the statute and did not require the consent of the affected village, city, or township.

The newly written second subsection of the 1989 amendment granted certain utilities the authority to enter upon, construct, and maintain utility lines longitudinally within limited access highway rights-of-way, as follows:

> The state transportation department may permit a utility as defined in 23 C.F.R. 645.105(m) to enter upon, construct, and maintain utility lines and structures, longitudinally within limited access highway rights of way in accordance with standards approved by the state transportation commission. Such lines and structures shall be underground or otherwise constructed so as not to be visible. The standards shall conform to governing federal laws and regulations and may provide for the imposition of a reasonable charge for longitudinal use of limited access highway rights of way. The imposition of such reasonable charges constitutes a governmental function, offsetting a portion of the capital and maintenance expense of the limited access highway, and is not a proprietary function. All revenue received under this subsection shall be used for capital and maintenance expenses incurred for limited access highways. [Former MCL 247.183(2), amended by 1989 PA 215.]

However, the 1989 amendment was short-lived. In 1994, the Legislature amended MCL 247.183 to read as follows (the language inserted in the 1994 amendment, 1994 PA 306, is italicized):

> (1) Telegraph, telephone, power, and other public utility companies, cable television companies, and municipalities *may* enter upon, construct, and maintain telegraph, telephone, or power lines, pipe lines, wires, cables, poles, conduits, sewers *or similar* structures upon, over, across, or under any public road, bridge, street, or public place, *including, subject to subsection (2)*, longitudinally within limited access highway rights-of-way, and across or under any of the waters in this state, with all necessary erections and fixtures for that purpose. A telegraph, telephone,

power, and other public utility company, cable television company, and municipality, before any of this work is commenced, shall first obtain the consent of the governing body of the city, village, or township through or along which these lines and poles are to be constructed and maintained.

(2) A utility as defined in 23 C.F.R. 645.105(m) *may* enter upon, construct, and maintain utility lines and structures longitudinally within limited access highway rights-of-way in accordance with standards approved by the state transportation commission *that* conform to governing federal laws and regulations. *The standards shall require that the lines and structures be underground and be placed in a manner that will not increase highway maintenance costs for the state transportation department. The standards may provide for the imposition of a reasonable charge for longitudinal use of limited access highway rights-of-way.* The imposition of a reasonable charge is a governmental function, offsetting a portion of the capital and maintenance expense of the limited access highway, and is not a proprietary function. *The charge shall be calculated to reflect a 1-time installation permit fee that shall not exceed $1,000.00 per mile of longitudinal use of limited access highway rights-of-way with a minimum fee of $5,000.00 per permit.* All revenue received under this subsection shall be used for capital and maintenance expenses incurred for limited access highways. [MCL 247.183(1), (2).]

In the first subsection, the Legislature deleted the phrase "except longitudinally within limited access highway rights of way" and replaced it with the phrase "including, subject to subsection (2), longitudinally within limited access highway rights-of-way . . . ." In the second subsection, the Legislature inserted language that permitted utilities, as defined in 23 CFR 645.105(m) (hereafter a § 105[m] utility), to lease at reasonable costs the rights-of-way of limited-access highways for the construction and maintenance of utility lines.

Wolverine contends that it is a § 105(m) utility.[5] Wolverine reasons that, because it is not any of the entities listed in subsection 13(1), it is governed only by subsection 13(2). Both Wolverine and the PSC staff assert that the words "subject to subsection (2)" in the first subsection would exempt a pipeline company from the requirements of the first subsection. We disagree. Neither party addresses the relevance of the word "including" in the first subsection or the language of the second subsection. When construing statutes, the primary task of this Court is to discern and give effect to the intent of the Legislature. *Huggett v Dep't of Natural Resources*, 464 Mich 711, 717; 629 NW2d 915 (2001). "If the statutory language is clear and unambiguous, then we conclude that the Legislature intended the meaning it clearly and unambiguously expressed, and the statute is enforced as written." *Id.* Unless defined in the statute, "every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Yudashkin v Holden*, 247 Mich App 642, 650; 637 NW2d 257 (2001) (quotation omitted).

The first sentence in subsection 13(1) provides that the described persons may enter upon, construct and

---

[5] 23 CFR 645.105(m) defines "utility" as

a privately, publicly, or cooperatively owned line, facility or system for producing, transmitting, or distributing communications, cable television, power, electricity, light, heat, gas, oil, crude products, water, steam, waste, storm water not connected with highway drainage, or any other similar commodity, including any fire or police signal system or street lighting system, which directly or indirectly serves the public. The term utility shall also mean the utility company inclusive of any wholly owned or controlled subsidiary.

maintain pipelines, "including, subject to subsection (2), longitudinally within limited access highway rights-of-way . . . ." According to *Random House Webster's College Dictionary* (1997), the word "include" means "to contain or encompass as part of a whole." Punctuation is an important factor in determining legislative intent, and the rules of grammar are presumed to have been known to the Legislature. *Kizer v Livingston Co Bd of Comm'rs*, 38 Mich App 239, 251; 195 NW2d 884 (1972). We conclude that, by inserting the word "including," and by using the separating commas before and after the phrase "subject to subsection (2)," the Legislature subjected such projects to the requirements of both the first and second subsections of § 13. Therefore, a project that is "longitudinally within limited access highway rights-of-way" is one of the defined projects listed in the first sentence of the statute. The sentence also provides that such a project is also subject to subsection 13(2), which defines the type of facilities that may enter into such a project. In this case, it is undisputed that Wolverine is a § 105(m) utility. Thus, Wolverine and its project are subject to the first sentence of the first subsection and Wolverine may enter upon, construct, and maintain the pipeline project at issue.

The second sentence in the first subsection provides that the described persons must first obtain the consent of the affected local governments before the work is commenced. It is unclear whether a § 105(m) utility is subject to the requirement of the second sentence. The second sentence makes no reference to a § 105(m) utility nor does it mention a project that involves the rights-of-ways of limited-access highways. However, the first sentences in both subsec-

tions are repetitive in the phrase "may enter upon, construct, and maintain" and the phrase "longitudinally within limited access highway rights-of-way." We presume that every word in a statute has some meaning, and this Court should avoid any construction that would render any part of a statute surplusage or nugatory. *Karpinski v St John Hosp-Macomb Ctr Corp*, 238 Mich App 539, 543; 606 NW2d 45 (1999). To conclude that the Legislature did not intend to subject a § 105(m) utility to the first subsection in its entirety would render the above phrases redundant. Therefore, we conclude that the Legislature intended to subject a project involving the rights-of-way of limited-access highways to the first subsection in its entirety.

The next question concerns *when* the consent of a local unit of government is required. The second sentence in the first subsection provides that consent should be obtained before "any of this work" commences. The Legislature is presumed to have intended the meaning it plainly expressed. *Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263, 270; 539 NW2d 574 (1995). There is nothing in the language of the sentence that requires the consent to be obtained before seeking the approval of the PSC.

The PSC staff argues that the language in the second subsection excludes the project from the requirements of the first subsection. We disagree. The language of the second subsection focuses on the technical specifications of underground pipelines and the fees charged for the use of a highway's right-of-way. There is nothing in the language of the second sub-

section that would exclude a pipeline company from the requirements of the first subsection.

The city next argues that the doctrine of judicial economy would require the prior consent of the affected governments. The city explains that the PSC grant of approval for the project would allow Wolverine to begin its construction without the consent of the affected local governments. According to the city, this would necessitate litigation in the circuit court to bar such action until the consent is obtained. We disagree. As the Supreme Court has explained, "our function is not to redetermine the Legislature's choice or to independently assess what would be most fair or just or best public policy." Rather, our function "is to discern the intent of the Legislature from the language of the statute it enacts." *Hanson v Mecosta Co Rd Comm'rs*, 465 Mich 492, 504; 638 NW2d 396 (2002). Here, the language of the statute requires the consent of the affected governments only before the person enters upon, constructs and maintains the project.[6] The city points to no statute or case law issued during the more than seventy years that the statute has existed that requires local consent *before* an application is submitted to the PSC. Accordingly, the PSC properly determined that Wolverine need not submit with its application the consent of the affected local governments.

---

[6] We note that a city has the right "to grant or withhold consent under Const 1963, art 7, § 29, provided the [city's] decision is not arbitrary and unreasonable." *South Haven v South Haven Charter Twp*, 204 Mich App 49, 52; 514 NW2d 176 (1994), citing *Union Twp v Mt Pleasant*, 381 Mich 82, 90; 158 NW2d 905 (1968).

B. EVIDENCE OF SETTLEMENT NEGOTIATIONS

The city next argues that the referee improperly barred evidence of earlier negotiations between Wolverine and the PSC staff that resulted in their agreement to adopt the instant pipeline route. The city argues that the settlement negotiations were part of a prior case and that the PSC improperly affirmed the referee's finding that the evidence constituted a settlement agreement in the present case and accordingly, was inadmissible pursuant to MRE 408.

A decision of the PSC is unreasonable when it is not supported by the evidence. *In re Sprint Communications Co, LP, Complaint, supra.* Where the PSC engages in fact-finding, such findings must be supported by competent, material, and substantial evidence on the whole record. *City of Marshall v Consumers Power Co (On Remand)*, 206 Mich App 666, 676-677; 523 NW2d 483 (1994). Here, the PSC explained in its order that the PSC staff rejected as unreasonable the route initially proposed in Case No. U-12334 because it was designed to be routed in a densely populated, highly developed area. The referee in that case agreed with the PSC staff. Before the PSC issued its order in that case, Wolverine withdrew the disputed route from the PSC's consideration and it negotiated alternative routes with the PSC staff. It is undisputed that the instant case was filed to submit for the PSC's consideration the alternative route that was acceptable to both parties. Because the city has not demonstrated that the PSC's decision was unreasonable, we conclude that the PSC's decision to uphold the referee's finding that the present case constituted

a continuation of Case No. U-12334 is supported by the evidence.

The city also asserts that the evidence was admissible pursuant to MRE 408 for other reasons: namely, to show that the above discussions violated public-policy considerations and the equal-protection rights of Lansing's minority population, and to impeach Wolverine's stated reason for pursuing the instant route. The city misstates the record. It never raised the above arguments before the referee. Rather, it subsequently raised those claims before the PSC. The PSC agreed that evidence of the discussions may have been properly admissible to demonstrate bias or wrongful intent, but it determined that the city failed to state those reasons to the referee. We conclude that the PSC's determination was proper.

### C. THE EQUAL PROTECTION CLAUSES

The city and Dedden assert that the PSC order violates the equal protection clauses of the United States and the Michigan Constitutions and MCL 483.5 by discriminating against minorities. The federal and Michigan constitutions guarantee equal protection of the law. US Const, Am XIV; Mich Const 1963, art 1, § 2. Michigan's equal-protection provision has been held to be coextensive with the analogous provision in the federal constitution. *Crego v Coleman*, 463 Mich 248, 258; 615 NW2d 218 (2000). The guarantee of equal protection under the federal and state constitutions mandates that people under similar circumstances be treated alike; equal protection does not require that persons under different circumstances be treated the same. *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 623; 552 NW2d 657 (1996), aff'd 457 Mich 341 (1998).

In this case, the PSC determined that the population density of the first pipeline route and the instant route were not similar and that the persons the city and Dedden sought to protect were not similarly situated to the persons who would have been affected by the initial proposed pipeline route. On appeal, the city and Dedden do not challenge the above determination as unlawful or unreasonable. Instead, they rely on statistical data from the United States 2000 Census showing that the minority population along the proposed route was above the national urban average. We decline to consider this data. The PSC, in its order, struck the data from evidence because the city and Dedden failed to have them properly admitted into evidence, although they had the opportunity to do so. Accordingly, the city and Dedden have failed to show that the PSC's determination with respect to the equal-protection claim was unlawful or unreasonable.

The city and Dedden also argue that the PSC, by affirming the referee's decision to exclude evidence of the prior negotiations between Wolverine and the PSC staff, improperly denied the city and Dedden the opportunity to pursue their claim of environmental racism.[7] We disagree with the city's assertion that the claim of environmental racism was properly raised below. This claim is raised for the first time on appeal. Accordingly, we decline to address it. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 471-472; 628 NW2d 577 (2001).

---

[7] The city and Dedden assert that environmental racism is a relatively new area of law and occurs whenever corporations or governments burden minority communities with environmental hazards. The issue has not been addressed by Michigan's appellate courts in a published opinion. The city and Dedden do not point to any published case law from sister jurisdictions that have addressed the matter.

D. THE REASONABLENESS OF THE PSC ORDER

The city and Dedden argue that the PSC's order violates the public interest and is unsupported by substantial, material, and competent evidence. This Court gives deference to the administrative expertise of the PSC, and we will not substitute our judgment for that of the PSC. *Residential Ratepayer Consortium v Public Service Comm*, 239 Mich App 1, 3; 607 NW2d 391 (1999). The city and Dedden must show that the PSC's order was arbitrary, capricious, an abuse of discretion, or not supported by the record. *Michigan Intra-State Motor Tariff Bureau v Public Service Comm*, 200 Mich App 381, 387-388; 504 NW2d 677 (1993).

The city and Dedden specifically challenge the PSC's findings with respect to several details of the complex aspects of the proposed pipeline system related to fire safety, motorist risk, environmental contamination, drinking- and surface-water contamination, the city's master plan, and third-party damages. They argue that the only competent evidence in this case was the evidence presented by the city. We disagree. An extensive record has been compiled in this case covering the details of each of the disputed matters. The record shows the existence of conflicting testimony and evidence. The mere existence of conflicting expert testimony and evidence is insufficient to overcome the prima facie presumption that the PSC's order is lawful and reasonable. MCL 462.26(8). As this Court has explained, it is for the PSC to weigh conflicting opinion testimony of the qualified and competent experts to determine how the evidence preponderated. *North Michigan Land & Oil Corp v Public Service Comm*, 211 Mich App 424, 439; 536 NW2d 259

(1995), quoting *Antrim Resources v Public Service Comm,* 179 Mich App 603, 620; 446 NW2d 515 (1989). Expert opinion testimony is "substantial" if offered by a qualified expert who has a rational basis for his views, regardless of whether other experts disagree. *Id.* The testimony of even one expert can be "substantial" evidence in a PSC case. *Michigan Intra-State Motor Tariff Bureau, supra* at 388. The disputed factual matters were properly within the sphere of the administrative expertise of the PSC and we will not substitute our judgment for that of the PSC on such matters. From our review of the whole record, we conclude that the PSC's determination that the proposed pipeline is reasonably designed and routed is supported by competent, material, and substantial evidence.

Affirmed.