BLAKE *v.* METROPOLITAN CHAIN STORES.

1. TAXATION—"SPECIAL ASSESSMENT" AND "TAX" DISTINGUISH-ABLE.

> A charge imposed only on property owners benefited is a special assessment rather than a tax notwithstanding the statute calls it a tax.

2. LANDLORD AND TENANT—COVENANT TO PAY ALL TAXES DOES NOT INCLUDE SPECIAL ASSESSMENTS.

> A covenant in a lease to pay "all taxes, ordinary as well as extraordinary, of every kind that may be levied upon or assessed against said premises," does not embrace an undertaking to pay a special assessment for a street improvement which has benefited the property itself to the amount thereof.

3. SAME—LEASE—CONSTRUCTION—INTENT.

> While the intention of the parties to a lease, to be deduced from the language employed by them, must control, yet the words used should be given a reasonable construction, if possible, one which will not give to one of the parties an unfair or unreasonable advantage over the other.

Error to Kent; Dunham (Major L.), J. Submitted April 9, 1929. (Docket No. 98, Calendar No. 34,162.) Decided June 3, 1929. Rehearing denied September 4, 1929.

Assumpsit by Katharine A. Blake and others against Metropolitan Chain Stores, a foreign corporation, on covenants in a lease. From a judgment for plaintiffs, defendant brings error. Reversed.

*McAllister & McAllister,* for plaintiffs.

*Linsey, Shivel & Phelps,* for defendant.

SHARPE, J. Plaintiffs leased certain premises in Grand Rapids to defendant for the term of 20 years from and after December 1, 1925. The rental for the first five years was at the rate of $1,500 per month, for the second five years at $1,750, and for the balance of the term as agreed upon by the parties, or, in case of disagreement, by arbitration therein provided for. The lease contained the following provisions:

"In addition to the sums to be paid by said second party, as aforesaid, said second party shall pay as part of the rental of said premises, all taxes, ordinary as well as extraordinary, of every kind that may be levied upon or assessed against said premises, or any part thereof, during the term of this lease, and all gas, light, heat and water rates, and during said term, keep said premises insured against loss or damage by fire in an amount not less than forty-five thousand ($45,000) dollars, and pay the premiums for such insurance; it being the intent hereof that the second party shall bear all expense connected with the maintenance of said property, and that the rentals herein reserved shall be net to first parties.   *   *   *

"Receipts for all taxes, or certified copies thereof, shall be delivered to Katharine A. Blake upon the thirtieth days of January and August of each year showing payment of all taxes levied upon or assessed

against said property, or any part thereof, during the preceding taxable period.  * * *

"The party of the second part shall keep said premises and every part thereof, including the roof and other exterior parts of the building and sidewalks in as good condition as when taken."

On November 11, 1926, the city commission adopted a resolution, providing for the narrowing of the sidewalk in front of the premises as a necessary public improvement. This was done. A later resolution provided:

"Resolved, by the city commissioner of Grand Rapids, that the entire of the expense amounting to $1,996.35 shall be assessed upon the owners of the real estate herein determined to be benefited by said public improvement."

The regularity of these proceedings is not attacked. In this action, plaintiffs seek to recover from defendant the amount of such special assessment and interest thereon. A judgment in their favor for $2,216.98 is here reviewed by defendant by writ of error.

The question presented is whether the special assessment is a tax within the meaning of this term as used in the lease. The Constitution (art. 10, § 2) imposes upon the legislature the duty to provide for an annual tax to pay the estimated expenses of the State government. The organization of counties, cities, and villages is provided for therein, with such powers, including that of taxation, as "shall be established by law." Article 8, § 1. Under these provisions taxes are laid on all property, both real and personal, subject thereto for the purpose of defraying the public expenses of the State or of any county, city, township, village, or school district therein.

Besides these, which may properly be designated "ordinary taxes," the Constitution provides for the levy by the boards of supervisors of counties of a tax for the construction and repair of public buildings and grounds (article 8, § 10); for the construction and maintenance of hospitals (article 8, § 11); and in certain cases for road purposes (article 8, § 26). These might well be designated extraordinary taxes, as they are not necessarily included in the ordinary expense of government. They are, however, spread uniformly over the taxing district.

A special assessment is laid on the property specially benefited by a local improvement in proportion to the benefit received for the purpose of defraying the cost of the improvement.

The word "taxes" presents to the mind exactions to defray the ordinary expenses of the government and the promotion of the general welfare of the country. It is not generally understood as applying to improvements, levied upon property with a resultant benefit thereto to the amount thereof. It must be assumed, as determined by the commissioner, that the value of plaintiffs' property was benefited by the improvement made to the amount of the assessment levied against it.

In *Re Petition of Auditor General,* 226 Mich. 170, this distinction was pointed out and many authorities cited. The village of East Grand Rapids, in that case, caused a general tax on the entire city to be spread to pay 60 per cent. of the cost of a sewer system and sewage disposal plant, and a special assessment of 40 per cent. upon the property specially benefited thereby. It was there said:

"The council here determined that 60 per cent. of the cost should be paid by a general tax. As to this percentage, the property of the association re-

ceives no benefit not enjoyed by all the property in the village. The legislature in its wisdom having exempted it from general taxation, the tax levied upon it cannot be sustained."

In *Grand Rapids* v. *Railway System,* 214 Mich. 1, it was held that an annual tax provided for in the railroad company's charter, "which tax shall be in lieu of all other taxes," "would not exempt defendant from payment of taxes for local improvements."

The lease provides that the lessee shall pay "all taxes." Had not the words which follow been added, there would seem to be no question that the lessee would not be liable for special assessments. In 1 Cooley on Taxation (4th Ed.), § 31, it is said:

"While the word 'tax,' in its broad meaning, includes both general taxes and special assessments, and in a general sense a tax is an assessment, and an assessment is a tax, yet there is a recognized distinction between them in that assessment is confined to local impositions upon property for the payment of the cost of public improvements in its immediate vicinity and levied with reference to special benefits to the property assessed. The differences between a special assessment and a tax are that (1) a special assessment can be levied only on land; (2) a special assessment cannot (at least in most States) be made a personal liability of the person assessed; (3) a special assessment is based wholly on benefits; and (4) a special assessment is exceptional both as to time and locality. The imposition of a charge on all property, real and personal, in a prescribed area, is a tax and not an assessment, although the purpose is to make a local improvement on a street or highway. A charge imposed only on property owners benefited is a special assessment rather than a tax notwithstanding the statute calls it a tax."

Section 51 reads as follows:

"The term 'general tax' is often used to distinguish such a tax from a special assessment. It is not unusual, however, for a different meaning to be given to the term 'special taxes.' Taxes are often spoken of as special if levied for a special purpose, and general if levied for some of the ordinary purposes of municipal government. A 'special' tax, as the term is used in statutes, is sometimes held to mean an additional tax over and above the general tax. For instance, in construing an exemption 'from all taxation, State, county, municipal, and special,' it has been held that the word 'special' did not apply to assessments for local improvements but instead referred to special taxes levied and collected after the manner of general taxes, such as road and school taxes. An inheritance tax has been held to be a special tax affecting a special class. So an income tax is held to be a 'special' tax."

The authorities cited in the footnotes support the text, and need not be particularly referred to.

The use of the word "extraordinary" cannot, in our opinion, be said to include the special assessment. If of any effect, it should be held to apply to the special taxes heretofore spoken of and also referred to by Judge Cooley in section 51.

Stress is laid upon the use of the words "levied upon or assessed against said premises." The proceedings for the enforcement of the collection of taxes are simple and easily understood. The property of the assessing district is first listed. A valuation is then placed upon it. After review, the roll is turned over to the officer by whom the taxes are to be spread. After certification of the several sums voted, he apportions the amounts against the several valuations, makes a copy thereof, and adds his certificate thereto. It then becomes the tax roll, and is delivered into the hands of the collecting officer.

The levy is then complete. The tax becomes a lien on the real estate listed on the roll. The words "levied upon" and "assessed against" have therefore a definite meaning in tax matters.

"To assess a tax is to adjudge and determine what proportion of his property the taxpayer shall contribute to the public. To levy a tax is to make a record of this determination, and to extend the assessment against the taxpayer's property." *Chicago, etc., R. Co.* v. *Klein,* 52 Neb. 258, 265 (71 N. W. 1069, 1071).

When the covenant in the lease is considered in its entirety, it seems clear that it does not embrace an undertaking to pay a special assessment for a street improvement which has benefited the property itself to the amount thereof. We do not think any lessee so covenanting would so understand it, nor that a fair construction of the language used justifies us in so holding. While the intention of the parties, to be deduced from the language employed by them, must control, yet the words used should be given a reasonable construction; if possible, one which will not give to one of the parties an unfair or unreasonable advantage over the other. Such construction must be one of general application to such language when inserted in leases of real estate. Had there been but a small building on the property, renting for, say $100 per month, the injustice of requiring the tenant to pay this special assessment of about $2,000 would be apparent.

In *Illinois Central R. Co.* v. *Decatur,* 147 U. S. 190, 202 (13 Sup. Ct. 293), in deciding whether an exemption from taxation included a "special tax for a local improvement," the court said:

"Another matter is this: In a general way it may be said that the probable amount of future taxes

can be estimated. While of course no mathematical certainty exists, yet there is a reasonable uniformity in the expenses of the government, so that there can be in advance an approximation of what is given when an exemption from taxation is granted, if only taxes proper are within the grant. But when you enter the domain of special assessments there is no basis for estimating in advance what may be the amount of such assessments. Who can tell what the growth of the population will be in the vicinity of the exempted property? Will there be only a little village or a large city? Will the local improvements which the business interests of that vicinity demand be trifling in amount, or very large? What may be the improvements which the necessities of the case demand? Nothing can be more indefinite and uncertain than these matters; and it is not to be expected that the legislature would grant an exemption of such unknown magnitude with no corresponding return of consideration therefor.''

A similar question was presented in *Carlyle* v. *Bartels*, 315 Ill. 271 (146 N. E. 192). The lease in that case provided that the lessee should pay ''all assessments for taxes for all purposes that may be assessed against said premises according to law, during the continuance of said lease.'' The court said:

''The special assessments imposed are not for some general or public object, nor are they an exaction made for the purpose of carrying on the government directly or through the medium of municipal corporations. A special assessment is not a charge on the estate that lessens its value, as a tax does. The special assessments in question are imposed for a special purpose. The improvement is made for the convenience of a particular district, and the property there situated is required to bear the expense in the proportion in which it is benefited.

The assessment is precisely in the ratio of the advantages accruing to the property in consequence of the improvement. It is but an equivalent or compensation for the increased value the property derives from the construction of the drainage system. Under the authorities and the decision in *DeClercq* v. *Barber Asphalt Pav. Co.*, 167 Ill. 215 (47 N. E. 367), the court properly held that special assessments levied by the drainage district were not taxes, as that term was used in the lease in question."

See, also, note in 12 Ann. Cas. 589, in which the question is discussed at length and many authorities cited and quoted from in support of the conclusion reached.

In *Chicago, etc., R. Co.* v. *Railroad Co.*, 75 Kan. 167 (88 Pac. 1085, 12 Ann. Cas. 588), it was said:

"It is so unnatural and unfair that an expense of this character should fall upon one who has no interest in the property except a right to occupy it for the time being that he will not be deemed to have assumed it unless in virtue of language that admits of no other construction."

The judgment is reversed and set aside, with costs to appellant. As it is apparent that no different record can be made upon a new trial, one is not ordered.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.