683 N.W.2d 148 (2004)
261 Mich.App. 308
NILES TOWNSHIP, Plaintiff-Counterdefendant-Appellee,
v.
BERRIEN COUNTY BOARD OF COMMISSIONERS and Berrien County, Defendants-Counterplaintiffs-Appellants.
Docket No. 244138.
Court of Appeals of Michigan.
Submitted February 3, 2004, at Grand Rapids.
Decided March 23, 2004, at 9:00 a.m.
Released for Publication June 24, 2004.
*149 Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C. (by James W. Porter), Kalamazoo, for the plaintiff.
Kreis, Enderle, Callander & Hudgins, P.C. (by R. McKinley Elliott, Thomas G. King, and Stacy Soper-Stine), Kalamazoo, for the defendants.
Lynda E. Thomsen, Kalamazoo, for Michigan Townships Association.
Before: MURRAY, P.J., and MURPHY and MARKEY, JJ.
PER CURIAM.
Berrien County determined that Niles Township could not finance the operation of its fire department by special assessment pursuant to MCL 41.801 et seq. Therefore, the county board of commissioners refused to certify the township's special assessment roll under § 37 of the General Property Tax Act, MCL 211.37. The township sought declaratory relief. The trial court ruled that the township had properly followed statutory procedure and that the life of the township's voter-approved special assessment was not limited to twenty years by Const 1963, art 9, § 6. Berrien County appeals by right. We affirm.

*150 I. Factual Background
Niles Township is situated within Berrien County. In 1967, township voters approved two special assessments, one for capital improvements for fire protection for up to three mills, and one for operation and maintenance of fire protection for up to 2-1/2 mills. After that vote, the township continued to annually assess these millages, holding hearings and submitting the request to the county for certification each year under MCL 211.37.
In a letter dated February 26, 2001, counsel for the county raised concerns with the way the township was funding its fire department and library, stating specifically that it was not appropriate to use special assessments to fund fire department operations because special assessments may only be used to recoup expenses of public improvements. The township's counsel responded that special assessments were appropriate because fire protection directly benefits the property assessed. The parties' counsel continued to debate the legal question through correspondence.
Despite the legal debate, the township prepared to have the special assessments certified by the county. The township published notice it intended to address taxes to be levied for fire operation and maintenance, library services, fire capital improvement, general fund, street lighting, and drains. The township did not send individual notices to property owners. After holding the tax hearing as scheduled, the township board approved all levies.
Days before the township's tax hearing, the Berrien County Board of Commissioners voted twelve to zero not to certify the township's library or fire special assessments. On September 27, 2001, Niles Township filed this action in the Berrien Circuit Court seeking a declaratory judgment and determination that the fire special assessments, as well as a library millage, were lawful. The township also sought a writ of mandamus and a preliminary injunction directing the Berrien County Board of Commissioners to certify the tax roll, including the fire special assessments. The county responded with counterclaims for a declaratory judgment seeking a determination that the two fire assessments, the library millage, and a drain millage, did not comply with authorizing statutes or Michigan's Constitution.
After conducting hearings, the trial court ruled that the township's library millage could not exceed the twenty-year limit of Const 1963, art 9, § 6 and that the rollback provisions of the so-called Headlee Amendment, Const 1963, art 9, § 31, also applied. The library millage issues are not before this Court.
With regard to the fire protection special assessments, the trial court first examined the statute that authorizes a township to levy a special assessment for the purchase and operation of equipment for police and fire departments, MCL 41.801. Reading the statute as a whole, the trial court concluded that the statute authorizes the township to specially assess for the operation and maintenance of its fire department. Likewise, the trial court rejected the county's argument that the township did not comply with statutory notice requirements. Specifically, the trial court found that the notice requirements of MCL 41.801 controlled and that MCL 41.803, which requires compliance with the notice requirements of MCL 41.724a, applied only if the township issued bonds to raise funds. For the same reason, the court found that the fifteen-year limitation of MCL 41.803 only applied when special assessments are used to retire issued bonds in annual installments. Accordingly, the trial court ruled that the township had not exceeded its statutory authority in *151 levying its fire protection special assessment. Finally, the trial court determined that this case is controlled by St. Joseph Twp. v. Municipal Finance Comm., 351 Mich. 524, 88 N.W.2d 543 (1958), which upheld a township-wide special assessment district and the use of the value of the property assessed as the measure of benefit to that property when levying the special assessment. Accordingly, the trial court entered its order granting in part and denying in part the township's complaint for declaratory relief and writ of mandamus.[1]
Berrien County now appeals by right the trial court's grant of declaratory relief regarding the legality of Niles Township's fire protection special assessments.

II. Analysis

A. Standard of Review
This Court reviews de novo both questions of statutory interpretation and constitutional issues. Harvey v. Michigan, 469 Mich. 1, 6, 664 N.W.2d 767 (2003); Roberts v. Mecosta Co. Gen. Hosp., 466 Mich. 57, 62, 642 N.W.2d 663 (2002). The determination whether to grant declaratory relief is within the sound discretion of the trial court. Allstate Ins. Co. v. Hayes, 442 Mich. 56, 74, 499 N.W.2d 743 (1993).

B. Statutory Issues
The first question we address is one of statutory interpretation and one of first impression. Does MCL 41.801 authorize a township to fund capital improvements for a fire department, the operation and maintenance of a fire department, both, or neither through a special assessment?
The primary goal of judicial interpretation of statutes is to discern and give effect to the intent of the Legislature; the rules of statutory construction merely serve as guides to assist in determining that intent with a greater degree of certainty. Gladych v. New Family Homes, Inc., 468 Mich. 594, 597, 664 N.W.2d 705 (2003); In re Quintero Estate, 224 Mich.App. 682, 692-693, 569 N.W.2d 889 (1997). It is a fundamental principle that a clear and unambiguous statute leaves no room for judicial construction or interpretation. Gladych, supra at 597, 664 N.W.2d 705; People v. McIntire, 461 Mich. 147, 152-153, 599 N.W.2d 102 (1999)." `When a legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself and there is no need for judicial construction; the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case.'" Id. at 153, 599 N.W.2d 102, quoting People v. McIntire, 232 Mich.App. 71, 119, 591 N.W.2d 231 (1998) (Young, P.J., concurring in part and dissenting in part) (emphasis in the original). Thus, this Court "may engage in judicial construction only if it determines that statutory language is ambiguous." Gilbert v. Second Injury Fund, 463 Mich. 866, 867, 616 N.W.2d 161 (2000).
Where the language in a statute is ambiguous, a court may go beyond the statute's words in order to ascertain legislative intent. Sun Valley Foods Co. v. Ward, 460 Mich. 230, 236, 596 N.W.2d 119 (1999). "An ambiguity of statutory language does not exist merely because a reviewing court questions whether the Legislature intended the consequences of the language under review. An ambiguity can be found only where the language of a statute as used in its particular context has more than one common and accepted meaning." Colucci v. McMillin, 256 Mich.App. 88, 94, 662 N.W.2d 87 (2003). If reasonable minds can differ with respect to the meaning of a statute, that statute may *152 be considered ambiguous and judicial construction is appropriate. Ross v. Michigan, 255 Mich.App. 51, 55, 662 N.W.2d 36 (2003).
With these concepts in hand, we examine the language of MCL 41.801, which reads in pertinent part:
(1) The township board of a township ... may purchase police and fire motor vehicles, apparatus, equipment, and housing and for that purpose may provide by resolution for the appropriation of general or contingent funds....
(2) The township board of a township ... may provide annually by resolution for the appropriation of general or contingent funds for maintenance and operation of police and fire departments.
(3) The township board ... may provide that the sums prescribed in subsection (2) for purchasing and housing equipment, for the operation of the equipment, or both, may be defrayed by special assessment on the lands and premises in the township or townships to be benefited....
(4) If a special assessment district is proposed under subsection (3), the township board ... shall estimate the cost and expenses of the police and fire motor vehicles, apparatus, equipment, and housing and police and fire protection, and fix a day for a hearing on the estimate and on the question of creating a special assessment district and defraying the expenses of the special assessment district by special assessment on the property to be especially benefited....
This statutory language is ambiguous regarding what expenditures may be defrayed by special assessment. Reasonable minds could differ on whether the statute authorizes special assessments for the general operation of a fire department or is limited to the purchase, housing, and operation of equipment. Indeed, the parties in this case, though both asserting that the language of the statute is clear and unambiguous, arrive at opposite conclusions about what the statute actually means. Therefore, judicial construction is warranted to ascertain the Legislature's intent.
Although the statute is ambiguous, we may not ignore its text as we must "consider both the plain meaning of the critical word or phrase as well as `its placement and purpose in the statutory scheme.'" Sun Valley, supra at 237, 596 N.W.2d 119, quoting Bailey v. United States, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). We must also presume every word is used for a purpose and must give effect to every clause and sentence. Pohutski v. City of Allen Park, 465 Mich. 675, 683-684, 641 N.W.2d 219 (2002). "The Court may not assume that the Legislature inadvertently made use of one word or phrase instead of another." Robinson v. Detroit, 462 Mich. 439, 459, 613 N.W.2d 307 (2000). Because the Legislature is presumed to know the rules of grammar, Mayor of Lansing v. Public Service Comm., 257 Mich.App. 1, 14, 666 N.W.2d 298 (2003), statutory language must be read within its grammatical context unless something else was clearly intended, Sun Valley, supra at 237, 596 N.W.2d 119. Also, parts of a statute must be harmonized to discern and carry out the intent of the Legislature. Macomb Co. Prosecutor v. Murphy, 464 Mich. 149, 159, 627 N.W.2d 247 (2001).
Applying these principles to MCL 41.801, we find the basic foundation for the authority of a township to provide for special assessment in subsection 3: "The township board ... may provide that sums prescribed in subsection (2) for purchasing and housing equipment, for the operation of the equipment, or both, may be defrayed *153 by special assessment...." The township's interpretation is that subsection 3 authorizes special assessments to defray the cost of any of the expenditures provided for in subsection 2, including general operating expenses. The county, on the other hand, argues that subsection 3 only authorizes special assessments for a very limited part of the expenditures authorized by subsection 2, specifically the component of maintenance and operation of the department dealing with "purchasing and housing equipment, for operation of the equipment or both." The county further argues that "operation of equipment" is not the general use of the equipment; it is the maintenance of the fire department's equipment.
Although both parties present plausible interpretations of the statute when focusing solely on subsection 3, the language of the statute as a whole indicates that the Legislature intended to allow broad use of special assessments to finance township fire departments.
First, subsection 4, laying out the procedure for levying a special assessment, requires that the township "estimate the cost and expenses of the police and fire motor vehicles, apparatus, and equipment, and housing and police and fire protection...." Giving the last phrase, "police and fire protection," its ordinary meaning allows for a broad category of expenses to be covered by the special assessment and supports the interpretation that special assessment can cover general operating expenses of the township's fire department. Moreover, MCL 41.802 provides that after the creation of a special assessment district, "the township board ... may appropriate annually that sum necessary for the maintenance and operation of the police and fire departments." The county argues that this provision simply allows a township to allocate funds from its general budget and is not independent authority to create a special assessment for ordinary operating expenses of a fire department. But when viewed as a part of the whole act, this section provides evidence of the Legislature's intent to allow special assessment to support the general operation of a fire department. Accordingly, with little evidence indicating a contrary legislative intent, we conclude MCL 41.801 permits a township, with approval of the electorate, to impose a special assessment to finance the general operation of its fire department.
Next, the county argues that even if the township may use a special assessment to finance the general operation of its fire department, the levy here would still be void because the township failed to comply with MCL 41.803, which in turn requires compliance with MCL 41.721 to 41.738. The county points to four procedural defects arising from the alleged failure to comply with MCL 41.803 and MCL 41.721 to 41.738:(1) failing to assess the special benefit conferred upon each parcel, (2) failing to provide sufficient notice to each property owner, (3) failing to describe the proposed improvement for which the assessment is being sought with respect to capital improvement taxation, and (4) failing to limit its voter-approved special assessment to fifteen years.
The township urges and the trial court determined that MCL 41. 803 only applies when a township issues bonds in anticipation of the collection of special assessments as provided in MCL 41.735. The county argues, to the contrary, that MCL 41.803 incorporates the procedural requirements of MCL 41.721 to 41.738 into the fire protection act without regard to whether the township issues bonds. This question is also one of first impression.
*154 Again, we look first to the language of MCL 41.803[1],[2] which provides:
All proceedings relating to the making, levying and collection of special assessments authorized by section 1 and the issuing of bonds, except as otherwise provided in this act, shall conform as near as practicable to proceedings provided for townships in Act No. 188 of the Public Acts of 1954, being sections 41.721 to 41.738 of the Michigan Compiled Laws, except that special assessments may be paid in a number of equal annual installments not exceeding 15, as the board may determine.
Because reasonable minds could differ about the meaning of this statute, we conclude that this provision is also ambiguous. Specifically, whether the procedures of MCL 41.721 et seq. apply to all special assessments under MCL 41.801, or simply those where improvements are funded by bonds to be repaid by collection of special assessments. Important language here is, "[a]ll proceedings relating to the making, levying and collection of special assessments authorized by section 1 and the issuing of bonds." MCL 41.803 (emphasis added). Although the word "and" denotes a conjunctive relationship between "assessments authorized by section 1" and "the issuing of bonds," this Court has noted that the common use of the words "or" and "and" is so frequently inaccurate that it has infected statutory enactments. Auto-Owners Ins. Co. v. Stenberg Bros., Inc., 227 Mich.App. 45, 50, 575 N.W.2d 79 (1997); see also People v. Humphreys, 221 Mich.App. 443, 451-452, 561 N.W.2d 868 (1997) (the use of the word "or" in this case gave rise to an ambiguity in the statute because it can be read as meaning either "and" or "or"). Nevertheless, because the words are not interchangeable, we should give them their strict meaning when their accurate reading does not give the text a dubious meaning, and there is no clear contrary legislative intent. Auto-Owners, supra at 50-51, 575 N.W.2d 79, citing Esperance v. Chesterfield Twp., 89 Mich.App. 456, 460-461, 280 N.W.2d 559 (1979).
While simply reading the word "and" as a conjunctive would dispose of this issue, other evidence exists to support the conclusion that the Legislature intended the fifteen-year limit of MCL 41.803 to apply only when a township issues bonds to be paid by special assessments. First, MCL 41.803 itself provides that that the provisions of MCL 41.721 to 41.738 do not apply where "otherwise provided in this act," being the fire protection act,[3] 1951 PA 33, as amended, MCL 41.801 et seq. The Legislature has provided a separate notice procedure within the fire protection act. Specifically, MCL 41.801(4) provides in part:
If a special assessment district is proposed under subsection (3), the township board ... shall estimate the cost and expenses of the police and fire motor vehicles, apparatus, equipment, and housing and police and fire protection, and fix a day for a hearing on the estimate and on the question of creating a special assessment district and defraying the expenses of the special assessment district by special assessment on the property to be especially benefited.... The hearing shall be a public meeting held in compliance with the open meetings act, 1976 PA 267, *155 MCL 15.261 to 15.275. Public notice of the time, date, and place of the meeting shall be given in the manner required by the open meetings act.... In addition the township board ... shall publish in a newspaper of general circulation in the proposed district a notice stating the time, place, and purpose of the meeting. If there is not a newspaper of general circulation in the proposed district, notices shall be posted in not less than 3 of the most public places in the proposed district. This notice shall be published or posted not less than 5 days before the hearing....
If the Legislature intended in MCL 41.803 to incorporate the notice provisions of MCL 41.724a into all special assessments for fire protection, there would be no need to include this different notice provision. We reach this conclusion because, in contrast to the notice provision of MCL 41.801(4), MCL 41.724a requires individual notices to property owners delivered by first class mail and two published notices in a circulating newspaper, one published at least ten days before the hearing. The construction the county urges would render the notice provision of MCL 41.801(4) entirely superfluous, violating the rules of construction that require that a court should, as far as possible, give effect to every phrase, clause, and word in a statute, Sun Valley, supra at 237, 596 N.W.2d 119, and avoid rendering any part of a statute surplusage or nugatory, Hoste v. Shanty Creek Management, Inc., 459 Mich. 561, 574, 592 N.W.2d 360 (1999).
With regard to the county's argument that the township failed to comply with MCL 41.725 by not determining the special benefit conferred upon each parcel of land, here too, the fire protection act has its own provision for determining the special benefit:
... [I]f the township board, or township boards acting jointly, determine to create a special assessment district, they shall determine the boundaries by resolution, determine the amount of the special assessment levy, and direct the supervisor or supervisors to spread the assessment levy on the taxable value of all of the lands and premises in the district that are to be especially benefited by the police and fire protection, according to benefits received ... to defray the expenses of police and fire protection. [MCL 41.801(4).]
If the county's construction were accepted, this provision also would be rendered surplusage.
We also find persuasive the fact that the Legislature chose to treat the issue of a township providing fire protection separately from other township "improvements." The Legislature has, in 1954 PA 188, as amended, MCL 41.721 to 41.738, authorized the financing by special assessment the construction, improvement, and maintenance of numerous types of township improvements. The improvements authorized include storm or sanitary sewers, water systems, public and private roads, public parks, pedestrian bridges, garbage collection and disposal, bicycle paths, erosion control structures or dikes, lighting systems, tree planting and removal, sidewalks, aquatic weed and plant control, bodies of water, dams, and sound barriers. MCL 41.722. Although the Legislature could have added "fire protection" to the list of improvements authorized in § 2 of the act, the Legislature chose to provide for police and fire protection in its own separate act. This constitutes further evidence that the Legislature intended that procedures to establish special assessments for police and fire protection be governed by MCL 41.801 et seq., unless the township issues bonds, and that the procedures with regards to other township *156 improvements were not meant to be incorporated into the fire protection act.
Berrien County does not offer any authority or concrete argument in support of its contention that MCL 41.803 applies to special assessments levied under MCL 41.801 regardless of whether bonding is involved. Accordingly, for the reasons discussed above, we conclude that the trial court did not err by construing MCL 41.803 as only requiring compliance with the procedures of MCL 41.721 et seq. when the township issues bonds. Therefore, because Niles Township issued no bonds, it was not required to comply with the provisions of MCL 41.803 and by incorporation, MCL 41.721 et seq. Accordingly, the county's arguments that the township violated the law by failing to assess the special benefit conferred upon each parcel, failing to provide notice to each property owner, failing to describe the proposed improvement for which the assessment is being sought with respect to capital improvement taxation, and failing to comply with the fifteen-year limitation must fail. We agree with the trial court that the township properly complied with the procedures of the fire protection act and that the act permits a township-wide special assessment based on taxable value of real property within the township for the operation of a fire department. St. Joseph Twp., supra.

C. Constitutional Issues
Article 9, § 6 of the Michigan Constitution prohibits the "total amount of general ad valorem taxes imposed upon real and personal property" from exceeding fifteen mills on each dollar of the assessed valuation of property for any one year, while at the same time authorizing the increase of up to fifty mills for a period of not to exceed twenty years at any one time, if approved by a majority of qualified electors in an election for that purpose. Berrien County argues that Niles Township's fire protection special assessments are "general ad valorem taxes" within the meaning of Const 1963, art 9, § 6 and therefore are subject to its twenty-year limit.[4] Niles Township argues that its fire protection levies are not "general ad valorem taxes," but rather "special assessments" not subject to this constitutional provision. The parties do not dispute that true special assessments are not taxes for the purposes of this constitutional provision. See Wikman v. Novi, 413 Mich. 617, 633-634, 322 N.W.2d 103 (Coleman, C.J.), 682-683 n 59 (Levin, J., dissenting); 413 Mich. 617, 322 N.W.2d 103 (1982), citing Graham v. Saginaw, 317 Mich. 427, 27 N.W.2d 42 (1947) (holding special assessments were not taxes within the meaning of tax limitations of Const 1908, art 10, § 21 comparable to the millage limitations of Const 1963, art 9, § 6). Therefore, the question before us is whether the fire protection levies here are truly special assessments or are merely general ad valorem taxes.
"Although it resembles a tax, a special assessment is not a tax." Kadzban v. Grandville, 442 Mich. 495, 500, 502 N.W.2d 299 (1993), citing *157 Knott v. City of Flint, 363 Mich. 483, 497, 109 N.W.2d 908 (1961). While the purpose of a tax is to raise revenue for general governmental purposes, the purpose of a special assessment is to defray the costs of specific local improvements. Kadzban, supra at 500, 502 N.W.2d 299. "`The differences between a special assessment and a tax are that (1) a special assessment can be levied only on land; (2) a special assessment cannot ... be made a personal liability of the person assessed; (3) a special assessment is based wholly on benefits; and (4) a special assessment is exceptional both as to time and locality.'" Blake v. Metropolitan Chain Stores, 247 Mich. 73, 77, 225 N.W. 587 (1929), quoting 1 Cooley on Taxation (4th ed), § 31. Also, in general, the amount of the special assessment must bear a reasonably proportionate relationship to the benefit accruing to the property assessed. Dixon Rd. Group v. Novi, 426 Mich. 390, 402-403, 395 N.W.2d 211 (1986); St. Joseph Twp, supra at 533, 88 N.W.2d 543.
Without providing authority, the county argues that the operation of a fire department is a general governmental purpose and, as such, cannot be funded by special assessment. The township responds by pointing out that because it is not mandatory that a township provide fire protection, providing fire protection is not a general governmental purpose. Ann Arbor v. Michigan, 132 Mich.App. 132, 136, 347 N.W.2d 10 (1984). Moreover, MCL 41.801 specifically provides for the financing of a fire department through special assessment. We agree that the statute authorizes financing both capital improvements and the general operation of a township's fire department by special assessment.
But the county contends that even if special assessments may finance general fire department operations, the township's special assessments are faulty because there was no determination regarding the benefit to any particular parcel of property assessed. Instead, the township specially assessed all real property in the township according to its taxable value. This argument was addressed and decided by our Supreme Court in St. Joseph Twp. There, like the case at hand, our Supreme Court was asked to determine whether a special assessment for fire protection on all real property within the township was really a tax. Id. at 532, 88 N.W.2d 543. After noting the differences between special assessments and taxes by citing Blake, supra at 77, 225 N.W. 587, quoting Cooley on Taxation, the Court held that using the value of the property to determine the benefit was proper and did not convert what otherwise was a special assessment into a tax. The Court stated, "we deal here with a special assessment statutorily authorized to provide fire protection... [and] it is difficult to conceive a fairer basis for determination of benefit from the creation of a fire department than one based upon value." Id. at 533, 225 N.W. 587. The Court also held that the special assessment for fire protection based on property valuation was not a tax because the special assessment bore a reasonable relationship to value of to the improvement to the property assessed. Id.
The county argues that St. Joseph Twp. is distinguishable from the case at bar because in St. Joseph Twp. the special assessment was of a limited duration and was intended for the construction of a building and the purchase of equipment. In light of our conclusion that the Legislature intended that townships be authorized to finance fire department general operations through special assessment, the county's attempt to draw a distinction is unavailing. The difference in the specific length or reason for a special assessment *158 for fire protection does not affect the important holding in St. Joseph Twp. that a special assessment does not become a tax simply because the value of the property assessed was used to determine benefit or because the assessment was levied upon all real property within the township.
Although the county recognizes that our Supreme Court has not expressly overruled St. Joseph Twp., the county nevertheless argues that its application is limited because the decision preceded both Michigan's Constitution of 1963 and the Headlee Amendment (1978),[5] and the recent decision of Bolt v. City of Lansing, 459 Mich. 152, 587 N.W.2d 264 (1998).
We conclude that the fact that St. Joseph Twp. predates this state's current Constitution or the Headlee Amendment of that Constitution diminishes neither its relevance nor its authority. The case turned not on a detailed analysis of the language of any provision in the Constitution as it existed then, but simply on the general question of the difference between a special assessment and a tax. Because nothing in the 1963 Constitution or the Headlee Amendment defines "special assessment," we also conclude those constitutional changes do not disturb the holding of St. Joseph Twp.[6]
We also find the county's reliance on Bolt, supra, to be misplaced. In Bolt the city of Lansing sought to limit pollution resulting when heavy precipitation caused combined storm water and sanitary sewer systems to overflow. Although seventy-five percent of the city already had separate systems for storm water runoff and sewage, the city sought to collect a "fee" over a thirty-year period to pay for a $176 million combined sewer overflow control program. The question before the Court, not dissimilar to the one at bar, was whether the cost imposed for the overflow control program was a fee or a tax subject to constitutional limitations, in particular, did it require approval by the electorate as required by Const 1963, art 9, § 31, part of the Headlee Amendment. Bolt, supra at 154, 169, 587 N.W.2d 264. Our Supreme Court engaged in an analysis of the difference between a tax and a fee, concluding that the city was actually imposing a tax; therefore, approval by the electorate was required by Const 1963, art 9, § 31. The Bolt Court did not address the difference between a tax and a special assessment. Accordingly, Bolt has little bearing to the critical question here.
Without any other authority and because both cases are similar factually, we conclude, like the trial court, that St. Joseph Twp., supra, is binding precedent and answers the question posed here. Soltis v. First of America Bank-Muskegon, 203 Mich.App. 435, 441, 513 N.W.2d 148 (1994). Therefore, we hold that the levies Niles Township imposes for fire protection are special assessments. Accordingly, the limitations of Const 1963, art 9, §§ 6 and 31 do not apply to Niles Township's special assessments for fire protection.
We affirm.
MURRAY, P.J. (concurring).
I fully concur in the majority's affirmance of the trial court's judgment in favor of plaintiff. However, I do not believe that either MCL 41.801(3) or *159 MCL 41.803 is ambiguous. As a result, I fully concur with the reasoning and result within sections I, II(A), and II(C) of the majority opinion, and concur in the result found within section II(B).
Beginning first with the last mentioned statutory provision, MCL 41.803 states that "[a]ll proceedings relating to the making, levying and collection of special assessments... and the issuing of bonds ..." must conform with certain notice provisions. (Emphasis added.) There is nothing ambiguous about this language for, as the majority notes, there is no comma separating the " special assessments" and the "bond" references. Therefore, they are conjunctive, i.e., they are to be read together as being connected to one another. Thomas Bros., Inc. v. Secretary of State, 90 Mich.App. 179, 184, 282 N.W.2d 273 (1979). Because we are to utilize common rules of grammar when reading statutory language, Deur v. Newaygo Sheriff, 420 Mich. 440, 445, 362 N.W.2d 698 (1984), MCL 41.803 is not ambiguous and its notice provisions apply only to special assessments done in connection with bonding.[1] Whether in other cases the Legislature's use of "and" or "or" has been interchangeable, or has caused other statutory provisions to be ambiguous, has no effect on this statutory provision, which is grammatically clear.
Likewise, MCL 41.801(3) is, in and of itself, unambiguous. Specifically, MCL 41.801(3) provides that township boards "may provide that the sums prescribed in subsection (2) for purchasing and housing equipment, for the operation of the equipment, or both, may be defrayed by special assessment." Read in isolation, as defendant would have us do, this subsection plainly provides that a special assessment can only be used to defray the specific costs of purchasing and housing equipment and for the operation of equipment, or both.
However, "the cardinal principle of statutory construction is that courts must give effect to legislative intent." Morales v. Auto-Owners Ins. Co. (After Remand), 469 Mich. 487, 490, 672 N.W.2d 849 (2003) (emphasis added). In reviewing questions involving statutory construction, "[ p]rovisions of a statute are not construed in isolation but, rather, in the context of other provisions of the same statute to give effect to the purpose of the whole enactment." Chiles v. Machine Shop, Inc., 238 Mich.App. 462, 472, 606 N.W.2d 398 (1999); see also Sweatt v. Dep't of Corrections, 468 Mich. 172, 179 n. 4, 661 N.W.2d 201 (2003) (words in a statute should not be construed in the void, but should be read together to harmonize the meaning in order to give effect to the act as a whole); Perez v. Keeler Brass Co., 461 Mich. 602, 610 n. 7, 608 N.W.2d 45 (2000), quoting Guitar v. Bieniek, 402 Mich. 152, 158, 262 N.W.2d 9 (1978) ("'doubtful or ambiguous provisions of a statute are construed not in isolation but with reference to and in the context of related provisions'"). Further, it is axiomatic that "courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." State Farm Fire & Cas. Co. v. Old Republic Ins. Co., 466 Mich. 142, 146, 644 N.W.2d 715 (2002).
If the provisions of MCL 41.801(3) were read as defendant suggests they should be, subsection 3 would directly conflict with and render void the language of subsections *160 2 and 4. Specifically, MCL 41.801(2) provides, in clear and unambiguous language, that contingent funds may be appropriated for "maintenance and operation of ... fire departments." The language in MCL 41.801(4) is likewise clear and unambiguous. In that subsection, the Legislature provided that in creating a special assessment, a township board shall estimate both the cost of "maintenance and operation of fire departments" (the general description set forth in subsection 2) and the cost of "fire motor vehicles," "equipment" and "housing" (the particulars listed in subsection 3). As the majority notes, subsection 4 repeatedly indicates that the special assessment is to defray the cost of the township's overall fire protection services by charging affected residents. In fact, in addition to the language in subsection 4 already noted above, subsection 4 indicates that the township board "shall annually determine the amount to be assessed in the district for police and fire protection... and shall hold a hearing on the estimated costs and expenses of police and fire protection. ..." MCL 41.801(4) (emphasis added). The same subsection also provides that if collections from the special assessment are "insufficient to meet the obligations or expenses incurred for the maintenance and the operation of the police and fire departments" the township is able to transfer or obtain a loan to make up for the difference. MCL 41.801(4) (emphasis added). Obviously, the language in subsections 2 and 4 provide much broader authorization for what costs can be defrayed by a special assessment than does subsection 3 as interpreted by defendant.
As noted, however, this Court is not permitted to read a statutory provision in such an isolated manner. Chiles, supra; Sweatt, supra. Rather, this Court must follow the basic principles of statutory construction and ensure that effect is given to each of the statute's provisions, which in turn gives effect to the Legislature's intent. State Farm Fire & Cas. Co., supra. If we were to read subsection 3 in such a limiting fashion, the broader authorizations within subsections 2 and 4 would be rendered nugatory.
Instead, when the provisions of MCL 41.801 are read in context rather than in isolation, it is clear that the Legislature intended to permit a township to create a special assessment to help defray both subsection 2 costs and subsection 3 costs. Nothing within the statutory language renders subsection 3 a limitation on the types of costs that may be defrayed by special assessments. When read in conjunction with the surrounding subsections, subsection 3 serves not as a limitation, but as an illustration of specific authorizations granted to a township. In accordance with these statutory provisions, a township may, by special assessment, not only defray the cost of the maintenance and operation of fire departments (as provided in subsection 2), but also for the specific purchases stated in subsection 3. In other words, the Legislature has provided that a special assessment can be utilized for both subsection 2 and subsection 3 costs, which is plainly evident in the provisions of subsection 4.
For these reasons, MCL 41.801(3) is not ambiguous for, when read harmoniously with subsections 2 and 4, it is not subject to more than one reasonable interpretation. Therefore, I concur in the affirmance of the trial court's judgment.
NOTES
[1] The portion of the trial court's orders denying relief pertained to the library issues.
[2] MCL 41.803 has two paragraphs, the second, denominated as subsection 2, relates to a township pledging its full faith and credit for the payment of special assessment bonds. The first paragraph, quoted here, is not, however, denominated as subsection 1.
[3] The act applies equally to police protection.
[4] The county also vaguely argues the township's fire protection assessment violates the so-called Headlee Amendment. That constitutional amendment added §§ 25 to 34 to article 9 of Michigan's Constitution. See generally, Kennedy, The First Twenty Years of the Headlee Amendment, 76 U Det Mercy L Rev 1031 (1999). We assume the county refers to the rollback provisions of Const 1963, art 9, § 31, which would apply to general ad valorem taxes unless approved by the electors for the payment of principal and interest on bonds. Const 1963, art 9, § 6. The parties agree that whether either constitutional provision applies to the township's fire protection levy depends on whether it is a "tax" or a "special assessment."
[5] See n 4, supra.
[6] We note that the Headlee Blue Ribbon Commission recommended that the state Legislature define the terms "tax," "fee," and "special assessment." Headlee Blue Ribbon Commission Report to Governor John Engler, Executive Summary and § 5, pp 29-31 (1994), cited in Bolt v. City of Lansing, 221 Mich.App. 79, 90 n. 3, 561 N.W.2d 423 (1997) (Markman J., dissenting).
[1] The majority also correctly concludes that to read MCL 41.803 as suggested by defendant would render the notice provisions of MCL 41.801(4) nugatory, which we are not permitted to do. Pittsfield Charter Twp. v. Washtenaw Co., 468 Mich. 702, 714, 664 N.W.2d 193 (2003).