# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS C. DEWARD,

        Petitioner-Appellant,

v

CITY OF FARMINGTON HILLS,

        Respondent-Appellee.

UNPUBLISHED
August 9, 2018

No. 337608
Michigan Tax Tribunal
LC No. 16-001047-TT

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

Petitioner appeals by right an order of the Michigan Tax Tribunal (MTT), which affirmed a special assessment district (SAD) created by respondent ("the City"). Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS

Petitioner owns a home located in the Independence Commons Subdivision in the City of Farmington Hills. The subdivision includes 4.4 miles of concrete roadway, last paved almost 50 years ago. In September 2015, consistent with its authority to determine the necessity of public improvements under its City Charter, the City held a public hearing and adopted a resolution for the repair of the subdivision's roads.

In April 2016, the City held a public hearing meeting, which petitioner attended, to review the special assessment roll for the repaving of the subdivision's roads. The total cost of the project would be $8,370,187.85 and petitioner, as well as other residents in attendance, objected to the assessment. Notwithstanding these objections, the City, under Section 9.05 of the City Charter, approved the project and the special assessment district, allocating 20 percent of the cost to the City, $1,651,374, and the remainder, $6,718,813.85, to the property specifically benefited, i.e., the residents of the subdivision. Using the "average abutting frontage method," a total of $19,705 was allocated to each resident in the special district to be paid in 15 equal annual installments.

Petitioner objected to the SAD and on May 7, 2016, filed a petition in the MTT, alleging that the SAD was invalid. Petitioner filed an 11-page explanation for basis of his appeal. Petitioner argued, *inter alia*, that the assessment was illegal because the City failed to comply with Sec. 25-8 of the Ordinance, which provides that the amount assessed to the City at large be

placed on the assessment roll. Petitioner further argued that the City's contribution to the overall project was not limited to 20% of the costs. Petitioner also claimed that the City failed to support the numbers and methodology used to calculate the assessment and that the assessment was disproportionate to the benefit derived. Although acknowledging that he had the burden of proof in rebutting the assessment's validity, petitioner nevertheless declared: "I will not be submitting a market value analysis of my home before and after the construction is complete. I submit in advance that neither will the City. However, until the City meets the burden of proof of supporting all the costs and the allocation of costs to the individual lots, I submit that the increase in market value will not exceed $5,000."

The City responded that petitioner failed to demonstrate a substantial or unreasonable disproportionality between the amount assessed and the resulting value. The City maintained that the 20% limitation on the City's contribution was valid and that its method of assessing frontage was likewise valid. Moreover, though not required to do so, the City provided the MTT with an appraisal of petitioner's property with and without the improvement – a $20,000 difference.

Petitioner offered rebuttal evidence after the hearing, wherein he attempted to discredit the City's appraisals. Petitioner offered his own schedules to demonstrate that his home was actually worth less as a result of the SAD or, alternatively, that the benefit to his home was approximately $2,500. However, the MTT judge concluded that petitioner's rebuttal evidence was "untimely and ineffective." The judge ruled that petitioner failed to satisfy his burden of proof rebutting the presumption of the SAD's validity. It later denied petitioner's motion for reconsideration. Petitioner now appeals by right.

## II. STANDARD OF REVIEW

"Review of a decision by the MTT is very limited." *Drew v Cass Co*, 299 Mich App 495, 498; 830 NW2d 832 (2013). "Absent fraud, this Court's review of a Tax Tribunal decision is limited to determining whether the tribunal made an error of law or adopted a wrong legal principle." *Leahy v Orion Twp*, 269 Mich App 527, 529; 711 NW2d 438 (2006) (quotation marks and citation omitted). "[T]he question whether and how much the value of land has increased as the result of certain improvements is factual, to be determined on the basis of evidence presented by the parties." *Kadzban v City of Grandville*, 442 Mich 495, 502; 502 NW2d 299 (1993). Such a factual question is resolved by the trier of fact, which is the MTT. *Id.* at 502. "On review, this Court will reverse a decision of the Tax Tribunal only if its decision is not supported by competent, material, and substantial evidence on the whole record." *Id.* "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Leahy*, 269 Mich App at 529–530 (quotation marks and citation omitted).

## III. ANALYSIS

A special assessment is a levy upon certain property in a specific district. *Kadzban v City of Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993). Although it is like a tax, it is not levied for the purpose of raising revenue for general governmental purposes, but is instead levied to defray the cost of specific local improvements. *Ahearn v Bloomfield Charter Twp*, 235 Mich

App 486, 493; 597 NW2d 858 (1999). These special assessments are sustained on the theory that they confer a peculiar and local benefit to the property assessed, such that the value of the property in the defined area is enhanced by the improvement, as opposed to conferring a benefit to the community at large. *Kadzban*, 442 Mich at 500. As such, special assessments are permissible only when the improvements result in an increase in the value of the land specially assessed. *Dixon Rd Group v Novi*, 426 Mich 390, 400; 395 NW2d 211 (1986).

Petitioners challenging special assessments face a particularly heavy burden because there is a presumption that special assessments are valid. *Kadzban*, 442 Mich at 505. "Two requirements must be met in order for a special assessment to be deemed valid: (1) the improvement funded by the special assessment must confer a special benefit upon the assessed properties beyond that provided to the community as a whole, and (2) the amount of special assessment must be reasonably proportionate to the benefits derived from the improvement." *Ahearn*, 235 Mich App at 493. Regarding the latter, "a special assessment will be declared invalid only when the party challenging the assessment demonstrates that "there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." *Kadzban*, 442 Mich at 502 (citation and quotations omitted). "The essential question is not whether there was any change in market value, but rather whether the market value of the assessed property was increased as a result of the improvement." *Ahearn*, 235 Mich App at 496. Our Court has explained:

> Common sense dictates that in order to determine whether the market value of an assessed property has been increased *as a result of* an improvement, the relevant comparison is not between the market value of the assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property *with* the improvement and the market value of the assessed property *without* the improvement. The former comparison measures the effect of time, while the latter measures the effect of the improvement. [*Id.* at 496-497.]

"[D]ecisions made by municipalities with respect to special assessments generally should be upheld." *Dixon*, 426 Mich at 403. A petitioner challenging a special assessment "at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." *Kadzban*, 442 Mich at 505. Only if the petitioner presents sufficient, credible evidence to rebut the presumption does the burden of going forward shift to the municipality. *Id.* at 505 n 5. In fact, without a finding that a petitioner has presented credible evidence to rebut the presumption of validity, the MTT has "no basis to strike down special assessments." *Id.*

## A. WHETHER THE SAD WAS PROPERLY FORMED.

Petitioner first argues that the SAD was not properly formed because the City failed to comply with its own Ordinance. Petitioner complains that, although the resolution provided that 80.77% of the cost would be paid by the SAD, no *total* cost was identified in the resolution.

Sec 25-8 of the City Ordinance provides:

The city assessor shall, upon the council resolution pursuant to the preceding section, prepare a special assessment roll including all lots and parcels of land within the special assessment district designated by the council, and shall assess to each such lot or parcel of land such relative portion of the whole sum to be levied against all the lands in the special assessment district as the benefit to such lot or parcel of land bears to the total benefits to all lands in such district. There shall also be entered upon such roll the amount which has been assessed to the city at large.

Petitioner argues that the City failed to specifically lay out the cost allocation at a public meeting. He complains that, in laying out only the percentages of costs percentages – 80.77% to the residents and 19.23% to the City – the City abdicated its legal obligation under the ordinance. Although petitioner argues that the SAD is invalid due to this perceived procedural irregularity, there is nothing in the ordinance or in the law that requires the action petitioner seeks. Moreover, by arguing that the City was required to lay out the specific cost to the City, petitioner seeks to avoid the presumption of validity and attempts to impermissibly shift the burden of proof to the City. Such a position is inconsistent with petitioner's acknowledgement that he bears the burden of proof and with extensive case law to that effect. Petitioner's argument directly contradicts the well-settled allocation of the evidentiary burden in challenges to special assessments. A special assessment is presumed valid until a successful challenge is made, which requires the challenging party to first present credible evidence to rebut that presumption. Petitioner "at a minimum, must present credible evidence to rebut the presumption that the assessments are valid." *Kadzban*, 442 Mich at 505. The initial burden of rebutting the presumption of validity is clearly on petitioner, and petitioner's argument to the contrary is without merit.

## B. WHETHER THE MTT IMPROPERLY FOCUSED ON THE BENEFIT CONFERRED TO THE EXCLUSION OF THE COST INCURRED.

Petitioner next argues that total costs for the project were never made available to the residents at a public meeting. In choosing to burden the residents with the costs of the project, petitioner believed that the City should have been required to justify its costs.

Although petitioner complains that the City failed to lay out and justify the costs associated with the project at a public meeting, petitioner cites no provision of the Charter or relevant ordinances requiring the City to do so. Petitioner fails to point to any specific language in the City Charter or caselaw that respondent is to conduct a cost-benefit analysis pursuant to any particular method, use of data, studies, or specific procedural steps. Instead, petitioner relies on the general proposition that a special assessment cannot be levied absent some regard for the amount of benefit that inures to the property and that some proportionality must exist between the amount of the assessment and the benefit. Absent citation to the procedures required and an explanation of the procedural steps violated, petitioner's argument is nothing more than a conclusory assertion that respondent unlawfully deviated from required procedures.

More importantly, petitioner admits that this information *was* available to the public. He writes: "The City did not provide any detailed breakdown of the total cost of the project. The

City did not provide the City's share of the total cost or the source of the City Funds. *I obtained this information through FOIAs*."

The fact that the City did not undertake a cost-benefit analysis using a methodology that petitioner would have preferred or otherwise make public the details of any such analysis undertaken during the assessment process, does not mean that the City did not consider whether the project would benefit properties in the special assessment district. Again, as previously stated, the MTT could rely on the presumption of the special assessment's validity until petitioner effectively rebutted that presumption. *Kadzban*, 442 Mich at 505 n 5.

## C. WHETHER THE CITY'S CONTRIBUTION WAS LIMITED TO 20% OF THE COSTS.

Petitioner argues that the MTT erred when it concluded that the City charter limited respondent's contribution to 20% of costs.

The Charter provides that not more than 20% of the costs of local road construction or improvement shall be borne by the City residents at large or by the City's general fund. But petitioner notes that the Charter limiting the City's contribution to 20% was approved before the residents approved a special millage for road improvements to which the property owners contributed. Petitioner sets forth that, had the City's share been from the general fund, then the 20% cap would apply, but that the 20% limitation was inapplicable given the many sources of funds that the City had available to be used exclusively for road improvement.

Petitioner's argument is fatally flawed for one reason – he conflates the terms "assessment" and "tax." As previously stated, a special assessment is a levy upon certain property in a specific district. *Kadzban*, 442 Mich at 500. Although it is like a tax, it is not levied for the purpose of raising revenue for general governmental purposes, but is instead levied to defray the cost of specific local improvements. *Ahearn*, 235 Mich App at 493. Special assessments are sustained on the theory that they confer a peculiar and local benefit to the property assessed, such that the value of the property in the defined area is enhanced by the improvement, as opposed to conferring a benefit to the community at large. *Kadzban*, 442 Mich at 500.

> The differences between a special assessment and a tax are that (1) a special assessment can be levied only on land; (2) a special assessment cannot be made a personal liability of the person assessed; (3) a special assessment is based wholly on benefits; and (4) a special assessment is exceptional both as to time and locality. Also, in general, the amount of the special assessment must bear a reasonably proportionate relationship to the benefit accruing to the property assessed. [*Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 323–324; 683 NW2d 148 (2004).]

Because a road improvement such as the one before the Court necessarily and particularly benefits the residents of that particular neighborhood, the law is fashioned in such a way that those residents bear the associated costs. The charter provision limiting the City's contribution to no more than 20% of the costs of the project is in keeping with this approach.

Petitioner fails to distinguish between the assessment *levy* on the residents of the Independence Commons Subdivision and the *tax* imposed on all of the City's residents under the millage.

## D. WHETHER *AHEARN* APPLIES.

Petitioner argues that the MTT erred when it relied on *Ahearn* because *Ahearn* dealt with a sewer-retention treatment basin required by federal law and, therefore, was not comparable to the present situation involving voluntary road improvement.

As previously discussed, *Ahearn* sets forth the relevant inquiry in determining whether an improvement funded by a special assessment confers a special benefit upon the assessed properties beyond that provided to the community as a whole. Under *Ahearn*, "[t]he essential question is not whether there was any change in market value, but rather whether the market value of the assessed property was increased as a result of the improvement." *Ahearn*, 235 Mich App at 496. The Court explained:

> Common sense dictates that in order to determine whether the market value of an assessed property has been increased *as a result of* an improvement, the relevant comparison is not between the market value of the assessed property *after* the improvement and the market value of the assessed property *before* the improvement, but rather it is between the market value of the assessed property *with* the improvement and the market value of the assessed property *without* the improvement. The former comparison measures the effect of time, while the latter measures the effect of the improvement. [*Id.* at 496-497.]

The *Ahearn* decision has been cited countless times. Petitioner offers no valid reason for discarding *Ahearn's* "with and without" analysis. The case is controlling regardless of the type of project involved. Again, petitioner failed to rebut the presumption of validity. Therefore, even if there was any reason to treat the present case differently from *Ahearn* (and we discern none), petitioner still had the burden of demonstrating that the assessment did not confer a special benefit to the residents of Independence Commons.

## E. WHETHER PETITIONER MET HIS BURDEN OF PROOF BY PRESENTING EVIDENCE THAT THERE WAS NO MARKET VALUE INCREASE WITH THE IMPROVEMENT.

Petitioner acknowledges that he erroneously believed that the City would not present any evidence comparing the market value of his home before and after construction. He argues that his rebuttal schedules showed that there was no increase in market value.

However, without a finding that petitioner presented credible evidence to rebut the presumption of validity, the MTT had "no basis to strike down special assessments." *Kadzban*, 442 Mich at 505. In fact, this Court has reversed the MTT when it reduced a special assessment despite finding that the petitioners' evidence was insufficient. In *Storm v Wyoming*, 208 Mich App 45; 526 NW2d 605 (1994), the petitioners challenged a special assessment imposed by the City of Wyoming. The MTT "specifically determined that the value report of petitioners' appraisers was unpersuasive." *Id*. at 47. But despite that finding, the MTT nevertheless accepted the petitioners' argument that the extent of the special benefits to their property was less than that

-6-

determined by the city, and reduced the amounts of the special assessments. *Id*. This Court reversed, holding that the MTT had no basis for "substitut[ing] its judgment for that of the municipality" where it had specifically found the petitioners' evidence "unpersuasive," thus meaning that the petitioners had failed to meet their burden of rebutting the presumption of validity. *Id.* at 47-48. The same is true here. Petitioner failed to overcome the presumption of validity. He only presented evidence in support of his position on rebuttal. The MTT properly determined that petitioner's schedules were untimely and that he failed to overcome the presumption that the assessment was valid.

## F. WHETHER THE CITY'S METHOD OF ASSESSING COSTS TO INDIVIDUAL LOTS WAS VALID.

Petitioner next argues that the City's method of calculating the assessment was faulty.

Again, our focus must be on the proportionality of the amount assessed and the value accrued to petitioner's property. In *Dixon,* our Supreme Court held that special benefits must be reflected by an increase in market value. "[A] determination of the increased market value of a piece of property after the improvement is necessary in order to determine whether or not the benefits derived from the special assessment are proportional to the cost incurred." *Dixon,* 426 Mich at 401. The holding in *Dixon* did not call for a "rigid dollar-for-dollar balance between the special assessment and the amount of the benefit" but rather "a reasonable relationship between the two." *Id.* at 402–403. This Court should only "intervene where there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." *Id.* at 403. The Supreme Court also rejected alternative methods of calculating benefits that did not take into account an increase in the market value of the property assessed. *Id.* at 398–401.

In *Kadzban,* the Supreme Court reiterated its holding in *Dixon* and held that "a special assessment will be declared invalid only when the party challenging the assessment demonstrates there is a substantial or unreasonable disproportionality between the amount assessed and the value which accrues to the land as a result of the improvements." *Kadzban,* 442 Mich at 502 (citation and quotation marks omitted). In *Kadzban,* the Supreme Court reviewed a special assessment cost per property owner, and evidence from the defendant municipality that the properties increased in value after the improvement. *Id.* at 499, 506–507. The language in *Kadzban* clearly places the burden on petitioner to demonstrate disproportionality. Here, petitioner effectively refuses to even attempt to meet his burden of proof, arguing instead that it is an impossible burden to meet. Such a position is inconsistent with *Dixon* and *Kadzban*.

## G. WHETHER THE MTT WAS BIASED AGAINST PETITIONER.

Petitioner argues that he did not receive a fair and impartial decision because of the MTT's bias. He points to the fact that one of the City's experts was a recent member of the MTT, that an email accidentally sent to petitioner demonstrated the chief clerk's frustration with petitioner, and the fact that the City received special treatment from the MTT because the MTT allowed the City to pay only $25 for 80 motions.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. Petitioner's claim is without merit.

First, petitioner failed to provide this Court with a transcript of the proceedings. Pursuant to MCR 7.210(B)(1)(a), it was petitioner's responsibility to provide the transcript. By failing to provide this Court with the pertinent portion of the record, namely the transcript of the hearing that would ostensibly show actual or perceived bias, petitioner has not made it possible for the Court to properly review this issue. Although petitioner is acting *in propria persona*, he is to be held to the same standards as an attorney. *Baird v Baird*, 368 Mich 536, 539; 118 NW2d 427 (1962).

Second, petitioner does not argue that MTT Judge Lasher was personally biased against him. Instead, petitioner impugns the entire process. As in the MTT, petitioner takes a "David and Goliath" position. He believes that it is impossible for a petitioner in a special assessment case to prevail. That is not true. But the fact remains that petitioner failed to overcome the presumption that the assessment was valid.

H. WHETHER THE MTT SHOULD ESTABLISH GUIDELINES FOR SPECIAL ASSESSMENT CASES SO THAT PETITIONERS MAY MEET THEIR BURDEN OF PROOF.

Finally, petitioner argues that unless this Court directs the MTT to establish a complete set of guidelines in special assessment cases to enable petitioners to meet the burden of proof in establishing market value "with and without" road improvements, petitioners do not stand a chance of meeting their burden of proof in such cases.

This is an error-correcting court. *W A Foote Mem Hosp v Michigan Assigned Claims Plan*, 321 Mich App 159; 909 NW2d 39 (2017). Petitioner does not identify any error in this issue and there is nothing to review. This Court does not ordinarily issue advisory opinions, nor will it decide a question "in or on which there is no real controversy." *Rozankovich v Kalamazoo Spring Corp*, 44 Mich App 426, 428; 205 NW2d 311 (1973). This Court does not have the authority to order the legislature or the MTT to establish a complete set of guidelines in special assessment cases to enable petitioners to meet the burden of proof in establishing market value with and without road improvements.

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra